EASTERN MISSOURI COALITION OF POLICE, FRATERNAL ORDER OF POLICE, LODGE 15, Respondent,

v.

CITY OF CHESTERFIELD, Appellant.

Eastern Missouri Coalition of Police, Fraternal Order of Police, Lodge 15, Respondent,

v.

City of University City, Appellant.

Nos. SC 91736, SC 91737.

Supreme Court of Missouri, En Banc.

Nov. 20, 2012.

---

Robert M. Heggie, Mark D. Mittleman and Harold V. O'Rourke, Stewart, Mittleman, Heggie & Henry LLC, St. Louis, MO, for the City, Record No. SC19736.

Gregory C. Kloeppel and Danielle M.S. Thompson, St. Louis, MO, for the Union, Record No. SC19736.

Kevin M. O'Keefe and Edward J. Sluys, Curtis, Heinz, Garret & O'Keefe PC, St. Louis, MO, for the City of Hazelwood, which filed a brief as friends of the Court, Record No. SC19736.

Stephen Douglas Bonney, Kansas City, MO, and Anthony E. Rothert and Grant R. Doty, St. Louis, MO, for the ACLU of Kansas & Western Missouri and the ACLU of Eastern Missouri, which filed a brief as friends of the Court, Record No. SC19736.

Sally E. Wheeler and Loretta K. Haggard, Schuchat, Cook & Werner, St. Louis, MO, and Jacqueline D. Shipma, Jefferson City, MO, for the Missouri National Education Association, which filed a brief as friends of the Court, Record No. SC19736.

Timothy A. Garnett and Nathan J. Plumb, Ogletree, Deakins, Nash, Smoak & Stewart PC, St. Louis, MO, for the City, Record No. SC91737.

Gregory C. Kloeppel and Danielle M.S. Thompson, St. Louis, MO, for the Union, Record No. SC91737.

Stephen Douglas Bonney and Grant R. Doty, St. Louis, MO, for the ACLU of Kansas & Western Missouri and the ACLU of Eastern Missouri which filed a brief as friends of the Court, Record No. SC91737.

PATRICIA BRECKENRIDGE, Judge.

The cities of Chesterfield and University City separately appeal judgments entered against each city and in favor of the Eastern Missouri Coalition of Police, Fraternal Order of Police, Lodge 15 (the union). In each action, the trial court entered a declaratory judgment ordering the public employer to adopt collective bargaining procedures. In a consolidated opinion in

the two cases, this Court holds that the right to organize and bargain collectively recognized in article I, section 29 inherently imposes a duty on each city to bargain collectively with the exclusive bargaining representative elected by its police officers and sergeants with a goal of reaching an agreement. University City and Chesterfield are not excused from carrying out this duty because the public employees represented by the union are not covered by the procedures codified in the public sector labor law, section 105.500, *et seq.*, RSMo.[1] Each city has the ability to establish a procedural framework for collective bargaining with its excluded employees if necessary to effectuate its duty. Nevertheless, because the cities may be able to meet their duty without establishing a framework, the trial courts erred in ordering them to do so. Consequently, this Court affirms the trial courts' declaration that the cities have a duty to bargain collectively but reverses the trial courts' judgments ordering them to establish any procedural framework. Furthermore, as authorized by Rule 84.14, this Court enters judgment ordering the cities to recognize the union as the collective bargaining unit for the cities' police officers and sergeants and to begin to meet and confer with the union for collective bargaining.

## Facts and Procedural Background

A majority of police officers and sergeants in University City and Chesterfield signed "representation interest cards" supporting the certification of the union as their exclusive representative for collective bargaining under the public sector labor law. Consequently, the union requested that each city voluntarily recognize the union's representative status and establish a procedural framework for collective bargaining. Both cities declined the union's request. In separate actions, the union petitioned for declaratory judgment, asserting that each city has an affirmative duty, under the Missouri Constitution, to establish a meaningful procedural framework allowing law enforcement employees to bargain collectively with their employers. In answer to the suit, the cities claimed that they are under no duty to adopt a process for collective bargaining and that the court lacked the authority to force a public employer to adopt such a process. All of the parties filed cross-motions for summary judgment.

In University City's case, the trial court entered summary judgment in favor of the union. In the case against Chesterfield, the court ruled in favor of the union after a bench trial. In both cases, the courts ordered the cities to expeditiously establish procedures under which the police officers and sergeants could bargain collectively. The trial court orders required that the framework include: (1) the scope of an appropriate bargaining unit that would include police officers and sergeants; (2) procedures for an election to certify the union as the exclusive bargaining representative for the cities' police officers and sergeants, including the date, time, and place of election; (3) the procedures for holding an election; and (4) the procedures for the meet and confer process.

The cities appealed. After an opinion, the court of appeals granted transfer to this Court. Mo. Const. art. V, sec. 10. On appeal, both cities challenge whether article I, section 29 of the Missouri Constitution imposes a duty on public employers to establish a framework for collective bargaining where none exists. In addition, if such a duty exists, both cities contest whether a trial court can order a public employer to create such a framework. Specifically, the cities claim that the trial court erred in that the union lacks stand-

---

1. Unless otherwise indicated, all statutory references are to RSMo 2000.

ing to sue, a city has no legal duty to establish collective bargaining procedures, and, because adopting such a framework would amount to legislating, the separation of powers doctrine prohibits courts from ordering cities to adopt a collective bargaining framework.

## Standard of Review

 University City's case was decided by summary judgment, which, because it is an issue of law, shall be reviewed de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The criteria on appeal for testing the propriety of summary judgment are no different from those that should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* This Court reviews the record in the light most favorable to the party against whom judgment was entered. *Id.* Summary judgment is appropriate when the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. Rule 70.04(c)(6); *Grattan v. Union Elec. Co.*, 151 S.W.3d 59, 61 (Mo. banc 2004).

 With regard to Chesterfield's case, because it was court-tried, it is held to the standard set out in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *White v. Director of Revenue*, 321 S.W.3d 298, 307–08 (Mo. banc 2010). Consequently, the trial court's decision will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Guyer v. City of Kirkwood*, 38 S.W.3d 412, 413 (Mo. banc 2001) (citing *Murphy*, 536 S.W.2d at 32 (Mo. banc 1976)).

**2.** "Legally protectable interest" signifies "standing" in the context of a declaratory judgment action. *Ste. Genevieve School Dist.*

## Discussion

### A. Standing

 As a threshold issue, the cities argue that the union lacks standing to sue on behalf of the police officers and sergeants. To gain associational standing in Missouri, an association must show: (1) its members would have standing to sue in their own right; (2) the interests that the association seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members. *St. Louis Ass'n of Realtors v. City of Ferguson*, 354 S.W.3d 620, 623 (Mo. banc 2011). University City contends the union fails the first element because its members have no legally protectable interest in a collective bargaining process.[2] Chesterfield claims that the union lacks standing because no individuals were parties to the action claiming a deprivation of their personal rights to collective bargaining and the union failed to prove its representative status as a bargaining unit.

The union has associational standing to sue to enforce its members' rights under article I, section 29. The first requirement is satisfied because, as discussed herein, the union members legally are entitled to bargain collectively. The second requirement is satisfied because the union's main purpose is to defend and promote the rights of its members. The third requirement is satisfied because the relief requested—an order that the cities establish a framework for collective bargaining—is prospective only, and no request was made for money damages or some other relief specific to individual members. *See Missouri Bankers Ass'n v. Director of Missouri Div. of Credit Unions*, 126 S.W.3d 360, 363 (Mo. banc 2003).[3]

*v. Board of Aldermen of City of Ste. Genevieve*, 66 S.W.3d 6, 10 (Mo. banc 2002).

**3.** The union's desired status as a representa-

760

## B. Duty to Bargain Collectively

 Article I, section 29 of the Missouri Constitution gives employees "the right to organize and to bargain collectively through representatives of their own choosing." Missouri's public sector labor law, codified in section 105.500, *et seq.*, and in 8 C.S.R. 40–2.010, *et seq.*, provides a procedural framework for collective bargaining for most public employees, but it expressly excludes certain professions, such as law enforcement officers and teachers. Section 105.510. This Court's decision in *Independence–Nat'l Educ. Ass'n v. Independence Sch. Dist.*, 223 S.W.3d 131 (Mo. banc 2007), addressed the collective bargaining rights of teachers. There, a teachers' union sought to enforce its members' constitutional right to collective bargaining after the school district rescinded a prior agreement, unilaterally instituted new terms, and refused to engage in further discussions with the union. *Id.* at 133. While still recognizing that public employees are forbidden from striking, and that nothing requires a public entity to reach an agreement with its employee unions, this Court ultimately held that the district's actions violated the teachers' rights. *Id.* Article I, section 29 grants public employees the right to bargain collectively, including those excluded from Missouri labor laws. *Id.* at 136. In collective bargaining, "proposals are made and either accepted or rejected," *id.* at 138, and the employer remains free to reject any proposal, *id.* at 136.

 For most public employees, Missouri's public sector labor law requires an employer to "meet, confer, and discuss" with designated employee representatives.

Section 105.520. The results of such a meeting are reduced to writing, and a proposal is presented to the employer for adoption, modification, or rejection. *Id.* While discussing the scope of the article I, section 29 right to collective bargaining, this Court recognized that although similar procedures do not exist for employees excluded from the statute, the very notion of collective bargaining still entails "negotiations between an employer and the representatives of organized employees to determine the conditions of employment ..." *Independence*, 223 S.W.3d at 138 n. 6 (citing *Black's Law Dictionary* 280 (8th ed.2004)). Indeed, "[t]he point of collective bargaining, of course, is to reach an agreement." *Id.* at 138. Therefore, an employer of statutorily excluded employees has a duty to bargain collectively with those employees and, when necessary, adopt procedures to participate in that process. *Id.* The absence of such a duty would render meaningless the rights guaranteed to public employees under article I, section 29.

Because the police officers and sergeants are excluded from Missouri's public sector labor law, the cities may create their own procedures when necessary, so long as they satisfy the constitutional requirements. *See id.* at 137. While conceding that the language of *Independence* identifies the role of public employers in collective bargaining, the cities rely on *Quinn v. Buchanan*, 298 S.W.2d 413 (Mo. banc 1957), to contend that article I, section 29 does not impose on public employers a legally enforceable duty to bargain collectively.

tive bargaining unit is unrelated to its gaining associational standing to sue to enforce the union members' right to a collective bargaining process. Therefore, the union need not prove status as a representative bargaining unit to establish standing in this case. Be-

cause the union has established associational standing according to the criteria laid out in *St. Louis Association of Realtors,* all other challenges based on standing or representative status are moot. 354 S.W.3d at 623.

Until now, *Quinn* was the only case in which this Court has specifically addressed whether article I, section 29 imposes this affirmative duty. In *Quinn*, this Court held that article I, section 29 does not guarantee union members the right to bargain collectively with their employers; instead, it found that the section only protects employees from government actions that would contravene that right. *Id.* at 419. Relying on *Quinn*, the cities assert that the constitution does not impose an affirmative duty on employers to bargain collectively and that this Court lacks the authority to compel a public employer to do so.

The primary rationale for *Quinn*'s holding is based on two erroneous inferences. The first is that a Bill of Rights, in this case the Missouri "Declaration of Rights" found in article I of its constitution, does not grant "new" rights; it merely declares those rights that the people already possess, regardless of whether they are the subject of a governmental grant. *Id.* at 417. The second inference is that provisions in a Bill of Rights may be only self-executing limitations on government that do not require any additional legislation to guarantee their observance.[4] *See id.* at 417–19. Under these inferences, any constitutional provision placed under a "Bill of Rights" heading may serve only as a shield against governmental action and not as a sword allowing individuals to require its enforcement. *Id.* at 419.

However, the authority cited in *Quinn*, Judge Thomas Cooley's treatise about constitutional limitations as well as a section of the first edition of American Jurispru-dence, does not support either inference. In each of those works, the authors observed that a Bill of Rights is generally a list of fundamental rights, recognized and declared in the document and not granted to the people by a constitution. 11 Am. Jur. *Constitutional Law* § 309 (1937); Thomas M. Cooley, Constitutional Limitations 36–39, 93, 166, 358 (1868). These sources also observed that such a Bill of Rights is generally a list of "thou shalt nots" that are written strictly as limitations on government and, as such, are self-executing by nature. *See* 11 Am.Jur. *Constitutional Law* § 309 (1937). The *Quinn* court interpreted those observations as absolute requirements and applied them to section 29.

While in most cases the broad observations of those learned treatises hold true, they do not encompass the breadth of modern constitutional law. Consistent with article I, section 29's variance from the nature of the provisions in the Bill of Rights of the United States Constitution discussed by Judge Cooley, the people of Missouri have added subsequent provisions to Missouri's Declaration of Rights that are not self-executing. Section 32 of that article provides an adequate illustration. Section 32 lists various crime victims' rights, including the right to information, the right to restitution, and the right to reasonable protection. However, the explicit language of this section contemplates executing legislation. The section begins by stating: "Crime victims, *as defined by law*, shall have the following

4. While at the beginning of the opinion, *Quinn* does not go so far as to make the broader statement that Bill of Rights provisions may be only self-executing limitations on government, see *Quinn*, 298 S.W.2d at 417 ("Provisions of a Bill of Rights are *primarily* limitations on government." (emphasis added)), the rest of the opinion leaves little room for the possibility of a non-self-executing affirmative right in a Bill of Rights, see *id.* at 418–19 ("[Article I, section 29] is a declaration of a fundamental right of individuals. It is self-executing to the extent that all provisions of a Bill of Rights are self-executing, namely: Any governmental action in violation of the declared right is void.").

rights, *as defined by law....*" (Emphasis added).

Moreover, inclusion in Missouri's "Declaration of Rights" does not mean that a provision cannot grant an affirmative right. The people of Missouri may place anything they wish within their constitution so long as it is not contrary to the federal constitution. *See St. Louis Fire Fighters Ass'n Local No. 73 AFL–CIO v. Stemmler,* 479 S.W.2d 456, 458 (Mo. banc 1972) ("[W]hen the people of the State of Missouri write or amend their constitution, they may insert therein any provision they desire, subject only to the limitation that it must not violate restrictions which the people have imposed on themselves and on the states by provisions which they have written into the federal constitution.").

Other jurisdictions already have recognized that provisions of their own Bills of Rights impose affirmative duties. For example, Connecticut's highest court found that section 20 of its Bill of Rights, which guarantees a right to equal protection under the law, combines with article 8, section 1 of that same constitution, guaranteeing the right to a free public education, to impose on the Connecticut legislature a non-self-executing, affirmative duty to provide a substantially equal educational opportunity for all of its students. *Sheff v. O'Neill,* 238 Conn. 1, 678 A.2d 1267, 1284–85 (1996) (citing Conn. Const. of 1965, art. I, § 20, art. 8, § 1). In *Great Falls Tribune v. Mont. Pub. Serv. Comm'n,* 319 Mont. 38, 82 P.3d 876, 886 (2003), the Supreme Court of Montana did not need to look beyond Montana's article II "Declaration of Rights" to find an affirmative duty.

Observing that Montana citizens have the right "to expect governmental agencies to afford such reasonable opportunity for citizen participation in the operation of the agencies prior to the final decision as may be provided by law," Mont. Const. of 1972, art. II, § 8, and to not "be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions ...," *id* at art. II, § 9, it held that the Montana government has an affirmative duty to make all of its records and proceedings available to public scrutiny. Likewise, article I, section 29 of the Missouri Constitution imposes on employers an affirmative duty to bargain collectively.

Consequently, *Quinn*'s holding was in error, providing an incorrect reading of the limits of article I, section 29. It, therefore, is overruled.

## C. Separation of Powers

The cities argue that the trial court's orders directing them to adopt collective bargaining procedures violate the separation of powers doctrine.[5] In its judgment, the trial court ordered University City to:

[E]xpeditiously establish a reasonable framework of its choosing for collective bargaining that will include: the scope of an appropriate bargaining unit that will include the City's police officers and sergeants; procedures for the election process for certifying FOP Lodge 15 as the exclusive bargaining unit for the City's police officers and sergeants, including the date, time and place of election; the procedures for holding an elec-

---

5. The doctrine is set forth in article II, section 1 of the Missouri Constitution:

The powers of government shall be divided into three distinct departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons,

charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted.

tion; and the procedures for the meet and confer process.

The trial court's instructions to Chesterfield are virtually identical. These court orders direct the cities to establish a framework in accordance with the rights recognized in *Independence* while preserving the cities' prerogative to define the details like any other administrative measure relating to employees.

The cities contend that compliance with these orders requires legislative action, thereby implicating the separation of powers doctrine, which defines and limits the powers of each branch of government. Mo. Const. art. II, sec. 1. Although the trial courts' orders do not specifically direct either city to pass an ordinance, *Independence* suggests that the adoption of a collective bargaining framework may require the cities to pass ordinances. *See Independence*, 223 S.W.3d at 136 (noting that a public employer's ability to reject any proposals of employee organizations to "prescribe wages and working conditions" is a use of its "governing authority"). *See also Layne v. City of Windsor*, 442 S.W.2d 497, 500 (Mo. banc 1969) (recognizing that a municipality only can take official action, other than in the performance of administrative functions, by passing an ordinance).

■ Although legislative power remains the province of legislative bodies, it is a proper role of the courts to compel legislative bodies to meet their constitutional obligations while leaving it to those bodies to determine how to meet them. *See Lenette Realty & Inv. Co. v. City of Chesterfield*, 35 S.W.3d 399, 408–09 (Mo. App.2000). *Accord Huttig v. City of Rich-*

*mond Heights*, 372 S.W.2d 833, 843–44 (Mo. banc 1963). *See also Sheff*, 678 A.2d at 1275–76 (finding that, just as the legislature has a constitutional duty to fulfill its affirmative obligation, the judiciary has a constitutional duty to review whether the legislature has fulfilled that obligation). The case of *Lenette Realty* is illustrative of this principle. There, the plaintiff sought a court order forcing a city to adopt his zoning proposal. *Lenette Realty*, 35 S.W.3d at 403. The trial court deemed that city's zoning classification unconstitutional as applied to the plaintiff, but it refused to order it to adopt the plaintiff's proposal. *Id.* at 404. Rather, the court directed the city "to place a reasonable zoning classification on the properties," leaving the specifics to the city's discretion. *Id.* at 409. The court of appeals affirmed, reasoning that "[a]ny such judicial command to a legislative body [as proposed by the plaintiff] raises serious questions regarding the constitutionally mandated distinction between legislative and judicial branches of this state's government." *Id.* at 408.

■ While withholding judgment as to whether the trial courts' orders offend the separation of powers, this Court finds that the trial courts' orders were too broad. If it is unnecessary for the cities to pass an ordinance to carry out their constitutional duty to bargain collectively, then there is no reason to order the cities to do so.[6] Therefore, the trial courts erred in requiring the cities to establish a procedure for a meet and confer process rather than simply ordering them to meet and confer with the union, allowing the cities, on their own,

---

6. While Missouri's public sector labor law governs the right of many public labor organizations to bargain collectively, it gives little, if any, guidance as to the structure of the meet and confer process, i.e. it does not speak as to how often groups meet and discuss, the timing of discussions, how many people may participate in each discussion, etc. All that the law provides is that representatives must meet, confer, and discuss proposals, and the results of that discussion are to be reduced to writing and presented to the appropriate administrative, legislative, or governing body. *See* section 105.520.

to make whatever arrangements are necessary to carry out that order.

■ In addition, the trial courts erred in ordering the cities to organize an election to designate the union as the exclusive bargaining representative because it is not a proper role for an employer to be responsible for holding an election. Here, the undisputed facts show that the majority of each city's police officers and sergeants selected the union as their exclusive bargaining representative.[7] Because an undisputed majority of employees have chosen the union as their representative and because the election process was not challenged in this proceeding, holding an election is not an issue, and it should not have been ordered.

## Conclusion

Under article I, section 29 of the Missouri Constitution, the cities of Chesterfield and University City have a legally enforceable duty to bargain collectively. Even when a framework does not yet exist for employees excluded by section 105.510, that does not excuse employers from their duty to bargain collectively with their employees. While the trial courts' declarations favoring the unions were correct, their orders were too broad.

Consequently, this Court affirms in part and reverses in part. This Court affirms the trial courts' declarations that the cities must meet and confer. In addition, because Rule 84.14 grants this Court the authority "to give such judgment as the court ought to give," this Court reverses the trial courts' summary judgments and orders the cities to recognize the union as the exclusive bargaining representative for

the cities' police officers and sergeants and to collectively bargain with the union by meeting and conferring with the union.

TEITELMAN, C.J., RUSSELL and STITH, JJ., and HARTENBACH, Sr.J., concur; FISCHER, J., dissents in separate opinion filed. DRAPER, J., not participating.

ZEL M. FISCHER, Judge, dissenting.

I respectfully dissent from the principal opinion. The principal opinion holds that the right to bargain collectively found in article I, section 29, inherently includes a corresponding duty for public employers to adopt procedures to participate in the collective bargaining process "when necessary." But the plain language of article I, section 29, and this Court's prior opinions interpreting it have held that article I, section 29, serves only to guarantee the right of Missouri employees to organize and to bargain collectively through representatives of their own choosing. I would adhere to this Court's longstanding precedent that this provision does not impose any affirmative duty on an employer, either public or private, that is not created by the General Assembly or other governing body.

## Standard of Review

This Court's standard of review for a circuit court's grant of summary judgment is de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Co.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the

---

7. Missouri's public sector labor law establishes an administrative procedure for challenging the election of an exclusive representative. Such process does not govern the cities' police officers and sergeants because they expressly are excluded from the coverage of those statutes. Section 105.510. Despite this exclusion, if the choice of an exclusive bargaining representative is disputed by an employer or a class of statutorily excluded employees, the validity of the election still can be challenged in a court proceeding.

law, an appellate court need not defer to the trial court's order granting summary judgment." *Id.* This Court reviews the record in the light most favorable to the party against whom judgment was entered. *Id.* Summary judgment is appropriate when the moving party has demonstrated that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 74.04(c)(6).

## Analysis

### A. Duty to Create a Procedural Bargaining Framework

The principal opinion holds that article I, section 29, of the Missouri Constitution inherently requires all public employers not covered by Missouri's public sector labor law "to bargain collectively with those employees and, when necessary, adopt procedures to participate in that process." Op. at 760. Because the principal opinion holds that all employers have an affirmative duty to bargain with their employees, this holding has the practical effect of requiring all employers to establish a procedural framework through which to bargain with their employees. According to the principal opinion, this duty derives from an affirmative duty imposed on all employers by article I, section 29, to negotiate with their employees. The principal opinion holds that failure to require employers to establish this framework will render article I, section 29, meaningless. Because this provision serves only to protect the right of employees to collectively bargain and does not impose any affirmative duties on employers, I do not agree.

The purpose of article I, section 29, "was to declare that such rights of collective bargaining were established in this state. It means that employees have the right to organize and function for a special purpose: namely, for the purpose of collective bargaining." *Quinn v. Buchanan,* 298 S.W.2d 413, 417 (Mo. banc 1957). This view is supported by the debates over the Missouri Constitution of 1945 in that the supporters of article I, section 29, envisioned the provision as guaranteeing that the right to organize and bargain collectively would be free from legislative interference. *See* 8 *Debates of the 1943–1944 Constitutional Convention of Missouri* 2517–18 (1943–1944). The Honorable R.T. Wood, one of the provision's main supporters, stated, "If [article I, section 29] is in our Constitution we will preclude the possibility and the probability as has happened in the past [of], in future sessions of the Legislature, many bills being introduced seeking to destroy collective bargaining." *Id.* at 2518. Wood argued that article I, section 29, would be a "measure of protection" that members of organized labor would "have the same right to organize and bargain collectively in our own interest as every other organization and every other group." *Id.*

The principal opinion dramatically expands the clear and express language of article I, section 29, into a "labor relations act." Although there was a time when this Court held the right to collective bargaining did not apply to public employees (which was reversed based on the concept that this Court should not add words to this same Constitutional provision), it has consistently held that article I, section 29, "is not a labor relations act, specifying rights, duties, practices and obligations of employers and labor organizations." *Quinn,* 298 S.W.2d at 418. "[T]he constitutional provision provides for no required affirmative duties concerning this right...." *Id.* at 419. Article I, section 29, was adopted as part of the Missouri Constitution to guarantee the right of employees "to organize and to bargain collectively through representatives of their own choosing." Mo. Const. art. I, sec. 29. In

this role, article I, section 29, has been understood to protect employees from coercion by their employer, undesired unions, or other entities that may attempt to coerce them into, or out of, union activity. *See Quinn*, 298 S.W.2d at 419 (enjoining an employer from engaging in activity designed to prevent its employees from organizing); *Bellerive Country Club v. McVey*, 365 Mo. 477, 284 S.W.2d 492, 501 (1955)(enjoining union picketing designed to force an employer to coerce its employees into joining the union). Article I, section 29, although it has existed in the Missouri Constitution since 1945, has never been interpreted or construed to require any affirmative duty on the part of an employer, public or private. *Quinn*, 298 S.W.2d at 419 ("It is evident that the constitutional provision guaranteeing employees the right to organize and bargain collectively through representatives of their own choosing does not cast upon all employers a correlative obligation.").

In *Quinn v. Buchanan*, this Court explicitly held that article I, section 29, requires no affirmative duties. *Id.* In *Quinn*, several employees sued their employer after they were terminated for engaging in union activities. *Id.* at 416. The employees sought an injunction enjoining their employer from future coercive actions and requiring him to recognize and negotiate with the union. *Id.* at 416–17. They also sought reinstatement, back pay, and punitive damages. *Id.* The Court held that the employer's actions in attempting to prevent its employees from organizing violated article I, section 29, but that the employer's refusal to bargain did not. *Id.* at 419. In a rare speaking order to ensure there was no misunderstanding or confusion created by this Court's opinion, the order overruling the motion for rehearing stated:

> **Sec. 29, Art. I of our Constitution ... does not purport to *require* collective bargaining by either employees or em-** ployers. **The right it gives to employees is the right to organize for the purpose of collective bargaining through representatives of their own choosing. Whether or not employers and organized employees can bargain or reach an agreement depends upon the willingness of both just as in the case of bargaining for any kind of contract between other persons who have the right to make contracts. Perhaps modern industrial conditions make desirable more than that for best labor relations but that is a matter for the Legislature.**

*Id.* at 420 (internal citations omitted). There is nothing in the text of article I, section 29, the debates concerning the adoption of article I, section 29, or this Court's prior interpretation of article I, section 29, that suggests this Court should not continue to follow *Quinn*. *Quinn* was not overruled nor modified in any way by this Court's holding in *Independence–Nat'l Educ. Ass'n v. Independence Sch. Dist.*, 223 S.W.3d 131 (Mo. banc 2007).

The principal opinion, however, has decided to overrule *Quinn* based on an erroneous understanding of *Quinn*'s holding and the logic through which that holding was reached. The principal opinion's primary concern is that *Quinn* held that article I, section 29, does not create any affirmative duties. The principal opinion asserts that *Quinn* made two erroneous inferences based on article I, section 29's, placement in Missouri's Declaration of Rights: 1) that Missouri's Declaration of Rights does not grant new rights but merely declares those rights that the people already possess, and 2) that provisions in the Declaration of Rights may only be self-executing limitations on government. Op. at 761. As a result of these inferences, the principal opinion believes that *Quinn* incorrectly held that article I, section 29, provides for no required affirma-

tive duties. But *Quinn* did not see these inferences as absolutes and did not base its decision solely on the placement of article I, section 29, in the Declaration of Rights. Instead, *Quinn* relied on both the general purposes of a Declaration of Rights and the specific language of article I, section 29, in coming to its holding. *Quinn,* 298 S.W.2d at 417.

First, *Quinn* looked to the placement of article I, section 29, in the Declaration of Rights to help ascertain the intended purpose of the provision. *Id.* The *Quinn* Court noted that "[p]rovisions of a Bill of Rights are primarily limitations on government, declaring rights that exist without any governmental grant, that may not be taken away by government and that government has the duty to protect." *Id.* *Quinn* also found that provisions of a Bill of Rights are self-executing in that any governmental action in violation of the declared right is void. *Id.* But *Quinn* also held that, while such provisions do not normally provide methods or remedies for their enforcement, it is within the legislative power to enact laws to protect and enforce them. *Id.* And in the absence of such legislation, individuals may protect such rights from infringement by other individuals "by any appropriate common law or code remedy." *Id.* *Quinn* did just that when it enjoined a private employer from further coercion of its employees. *Id.* at 419. The Court then inferred that article I, section 29's, placement in the Declaration of Rights sheds light on the purpose of the provision. Its placement there, according to *Quinn,* established that "employees have the right to organize and function for a special purpose: namely, for the purpose of collective bargaining." *Id.* at 417.

Next, *Quinn* looked to the language of the provision itself to recognize that the provision is not a labor relations act. *Id.* at 418. The *Quinn* Court noted that arti-

cle I, section 29, does not specify "rights, duties, practices and obligations of employers and labor organization[s]." *Id.* *Quinn* stated that the provision "provides for no required affirmative duties concerning [the right to bargain]." *Id.* at 419. It did so, not solely because it is a provision in the Declaration of Rights, but also because no such affirmative rights are included in the language of the provision. *Quinn* recognized what is apparent from reading article I, section 29—that the provision serves only to establish and guarantee the right to bargain, not to create a comprehensive labor regulation akin to the National Labor Relations Act.

*Quinn* never held that affirmative duties may never flow from a provision in a Bill of Rights. It recognized merely that it is the primary purpose of these provisions to guarantee rights. *Id.* at 417. In some circumstances, as the principal opinion notes in its survey of other jurisdictions, the provisions in a Bill of Rights may create affirmative duties, but this particular provision does not do so. The fact that several foreign jurisdictions have found affirmative duties included in constitutional provisions entirely unrelated to the provision at issue here is no reason for this Court to construct a comprehensive labor regulation from the simple sentence of article I, section 29.

Furthermore, *Quinn* relied on this Court's earlier determination of the original purpose of article I, section 29. This Court stated that "the principal purpose of Section 29 was to declare that such rights of collective bargaining were established in this state. It means that employees have the right to organize and function for a special purpose: namely, for the purpose of collective bargaining." *Id.* This interpretation is in line with the discussions in the Constitutional Debates of 1943–1944 noted previously. The provision that

would become article I, section 29, was introduced with the specific purpose of protecting from government interference the right to bargain collectively. *See* 8 *Debates of the 1943–1944 Constitutional Convention of Missouri* 2517–18 (1943–1944). Proponents of the provision introduced the provision as a result of what they perceived as attempts in the General Assembly to "destroy collective bargaining." *Id.* at 2518. The primary purpose behind the provision was to provide a "measure of protection" that members of organized labor would "have the same right to organize and bargain collectively in our own interest as every other organization and every other group." *Id.* But, as recognized by *Quinn*, article I, section 29, was never intended to establish the procedures for facilitating the process of collective bargaining.

*Quinn* is long-established precedent of this Court. "The doctrine of *stare decisis*—to adhere to decided cases—promotes stability in the law by encouraging courts to adhere to precedents." *Med. Shoppe Int'l, Inc. v. Dir. of Revenue*, 156 S.W.3d 333, 334–35 (Mo. banc 2005). While the doctrine is not absolute, "a decision of this court should not be lightly overruled, particularly where, as here, the opinion has remained unchanged for many years." *Novak v. Kansas City Transit, Inc.*, 365 S.W.2d 539, 546 (Mo. banc 1963).

The principal opinion incorrectly presumes that if the government does not establish a procedure to participate in the bargaining process, then it is denying the right to bargain collectively. But this is not the case. Under all previous interpretations of the provision, an employer, ei-

ther public or private, does not violate article I, section 29, by refusing to bargain. So long as government leaves intact the ability of employees to organize and to bargain collectively, then it has not violated the constitution. The creation of the right to collective bargaining is thought to have equalized the playing field so that the free market could manage future bargaining. *Quinn* held that a private employer does not violate article I, section 29, if it refuses to recognize and bargain with the union. *Quinn*, 298 S.W.2d at 419. Likewise, when a public employer refuses to negotiate with its employees or fails to set up a framework to facilitate bargaining, no violation of article I, section 29, occurs.

Nothing in *Independence* changes this understanding of article I, section 29. *Independence* does not hold that public employees have the right to bargain collectively under a procedural framework set by their employer. Rather, *Independence* recognized that when a public employer *chooses* to bargain, the General Assembly or the relevant public employer, and not this Court, has a role in establishing a bargaining framework. *Independence*, 223 S.W.3d at 136.[1] Recognizing that the legislature or other relevant public employer has a role in creating a framework, of course, is not the same as holding that the legislature, or other public employer, must do so.

The Court in *Independence* stated, "[T]his Court's reading of [Missouri's public sector labor law] recognizes the role of the general assembly, or in this case, the school district—in the absence of a statute covering teachers—to set the framework

---

1. Even though the learned Judge Price foreshadowed that it would be hard to predict how a majority of this Court would apply "giving public employees a new constitutional right to 'collective bargaining' that the majority does not define," it is surprising that a majority of this Court would reverse years of precedent to hold now that every local government that has public employees must establish its own version of the public sector labor law to establish a framework to negotiate with its public employees. *Independence*, 223 S.W.3d at 148 (Price, J., dissenting).

for these public employees to bargain collectively through representatives of their own choosing." *Independence*, 223 S.W.3d at 136. The principal opinion misreads this sentence to *require* that public employers adopt procedures to participate in the collective bargaining process "when necessary". However, this dicta in *Independence* recognized only that setting bargaining frameworks is for legislative bodies, *and not courts*. This, of course, is in line with the separation of powers provision found in article II, section 1, of the Missouri Constitution. In fact, faced with this direct question relating to private employers, this Court held, "Thus implementation of the right to require any affirmative duties of an employer concerning [the right to collective bargaining] is a matter for the Legislature." *Quinn*, 298 S.W.2d at 419. Under the principal opinion's logic, this Court would have held the public sector labor law invalid to the extent that it excluded teachers, thereby including teachers in the scope of the statute, but it refused to do so and, in the process, deferred to the legislature. *Independence*, 223 S.W.3d at 136. *Independence* did not require public employers to set procedural frameworks; it recognized that it is not the place of the courts to do so.

The discussion in *Independence* concerning procedural frameworks that require proposals to be made or requiring an employer to "meet, confer, and discuss" with designated employee representatives comes from Missouri's public sector labor law. Section 105.500, *et seq.*, RSMo 2000. Missouri's public sector labor law does not apply to police, deputy sheriffs, Missouri state highway patrolmen, Missouri national guard members, or any teachers of any Missouri schools, colleges and universities, and it expressly denies all public employees the right to strike. Sections 105.510 & 105.530. *Independence* recognized that the "public sector labor law is read to provide the procedures for the exercise of this right for those occupations included[.]" *Independence*, 223 S.W.3d at 136. These requirements, however, are not found in article I, section 29, of the Missouri Constitution, and *Independence* did not hold differently.

The legislature is permitted to pass any statute that is not prohibited by the Constitution. The public sector labor law was an exercise of this power. But the mere fact that the legislature has created a framework for certain employees of the state does not obligate it, under article I, section 29, to create a framework for other employees. In fact, there are obvious policy reasons why the NLRA and Missouri's public sector labor law exclude law enforcement and public school teachers from their application. Yet, the principal opinion has expanded the rights of law enforcement personnel and teachers[2] beyond those legislative acts based on a surprising new interpretation of article I, section 29.[3]

---

**2.** *American Federation of Teachers v. Ledbetter,* 387 S.W.3d 360 (Mo. banc 2012) (decided November 20, 2012, No. SC91766).

**3.** The principal opinion's redefining of our state constitutional provision, which was adopted to authorize an employee to choose a representative to collectively bargain, to now create an affirmative duty on all employers to "meet and confer with the union, in good faith, with the present intention to reach an agreement" fails to consider all of the practical ramifications now placed on statewide private employers, in addition to public employers. *American Federation of Teachers v. Ledbetter,* 387 S.W.3d 360, 362 (Mo. banc 2012) (decided November 20, 2012, No. SC91766). *See also Eastern Missouri Coalition of Police, Fraternal Order of Police, Lodge 15 v. City of Chesterfield* (consolidated with) *Eastern Missouri Coalition of Police, Fraternal Order of Police, Lodge 15 v. City of University City,* 386 S.W.3d 755, 758 (Mo. banc 2012) (decided November 20, 2012, Nos. SC91736 and SC91737).

The *Independence* Court's holding was: "In any event, article I, section 29, applies to 'employees,' regardless of whether they are in the private or public sector, and nothing in this constitutional provision requires public employers to reach agreements with their employee associations." *Id.* at 139. This holding does not impose any affirmative duty on public employers.

The plain language of article I, section 29, supports this understanding. The words "duty" or "framework" or "procedure" do not appear in the provision, and the provision says nothing to indicate that this is required. The principal opinion holds that the "very notion of collective bargaining" requires public employees to set a procedure to participate in the process. Op. at 760. Even though *Independence* reversed years of precedent, it did so based on the language of article I, section 29, of the Missouri Constitution, not "notions of collective bargaining." In fact, this Court expressly stated when it reversed years of precedent to recognize the right of public employees to collectively bargain, "[t]here is no authority for this Court to read into the Constitution words that are not there." *Independence*, 223 S.W.3d at 137. Yet, that is what the principal opinion has done in this case.

## B. Separation of Powers

The principal opinion's mandate raises serious separation of powers concerns. Article II, section 1, of the Missouri Constitution codifies the separation of powers doctrine in Missouri. The provision states:

> The powers of government shall be divided into three distinct departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted.

The role of this Court in reviewing the constitutional validity of the legislature or executive traditionally has been to declare whether or not the legislature's or executive's action is constitutional. This function derives from the Court's duty to make final determinations of questions of law. *Asbury v. Lombardi*, 846 S.W.2d 196, 200 (Mo. banc 1993) ("The quintessential power of the judiciary is the power to make *final* determinations of questions of law."). If a legislative or executive action conflicts with a constitutional provision, this Court must hold the action invalid. *State ex inf. Nixon v. Kinder*, 89 S.W.3d 454, 459 (Mo. banc 2002). In many cases, the declaration of this Court will render a statute or an action void, leaving it up to the legislature to decide whether or not to attempt to pass a similar, but constitutionally acceptable, replacement statute. Similarly, when legislative inaction is declared unconstitutional, it is the role of the legislature to decide the best way to comply with the constitution. This is true because the legislature is the proper branch of government to make policy decisions. *Parktown Imports, Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 674 (Mo. banc 2009). When there are multiple answers to a question, the legislature is the appropriate branch to choose the best one.

The principal opinion goes beyond its authority and treads on Chesterfield's and University City's legislative power by ordering them to recognize the union as the exclusive bargaining representative and to meet and confer with the union. While the principal opinion's rationale relies on concepts that have become commonplace in bargaining through the National Labor Relations Act or Missouri's public sector labor law, those statutes expressly exclude police officers. It is for the legislature and local governing bodies, with their respec-

tive budgeting constraints, to decide, as a matter of policy, if, and when, they desire to meet, confer and negotiate with their employees. This Court should not mandate that these cities create a procedural framework in which they have an affirmative duty to bargain with their police officers.

The principal opinion asserts the authority to issue these mandates, citing two cases, each of which involves a zoning framework, to support its argument. However, neither of these cases confers authority on the Court to order that a legislative body pass an ordinance of the type mandated here. In *Huttig v. City of Richmond Heights*, the Court invalidated a zoning ordinance and ordered that the plaintiff's rezoning application be approved. 372 S.W.2d 833, 844 (Mo.1963). In so holding, the Court stated, "It is not our function ... to prescribe what commercial use shall be permitted on this property, especially since no specific plan or proposal has been filed" and held only "that the present ordinance ... is void as applied to the tract in question and that the application of plaintiff's for rezoning to commercial usage must be granted." *Id.* In *Lenette Realty & Investment Co. v. City of Chesterfield*, the court of appeals invalidated a zoning ordinance as unreasonable. 35 S.W.3d 399, 408 (Mo.App. 2000). Quoting *Huttig*, the Court refused to adopt the plaintiff's proposed zoning plan and approved the circuit court's order that the city "place a reasonable zoning classification on the properties." *Id.* at 408–09. These cases do not provide the circuit court or this Court authority to enter the mandates at issue here. To the contrary, both of these cases refused to enter similar mandates. In *Lenette*, upon refusing to order the city to adopt the plaintiff's proposed zoning ordinance, the court stated, "Any such judicial command to a legislative body raises serious questions regarding the constitutionally man-

dated distinctions between the legislative and judicial branches of this state's government." *Id.* at 408.

An independent search for case law that would justify the type of order issued by the principal opinion in this case returned no results, lending further support to the fact that such authority does not exist. The orders of the circuit court and the mandate of the principal opinion violate the separation of powers provision embodied by article II, section 1.

## Conclusion

Article I, section 29, is not a labor relations act, specifying duties and responsibilities of employers and labor organizations. It serves to guarantee employees in this state the right to organize and to bargain collectively through representatives of their own choosing. The courts should perform their judicial function and determine whether the right has been violated rather than the legislative function of imposing obligations not found in the text of article I, section 29, this Court's prior opinions interpreting article I, section 29, or the constitutional history of article I, section 29. The provision does not impose any correlative duty on the state, other governmental body, or any other employer to set procedures through which employers and employees must bargain. While the legislature, local governmental bodies, and public employers may have a role in establishing procedures to participate in collective bargaining, they are not required to do so by article I, section 29. The courts could and should, on a case by case basis, decide whether the rights of employees protected by article I, section 29, have been violated and, as in any other case, provide an appropriate judicial remedy.