

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| COALITION OF GRADUATE WORKERS, ERIC SCOTT, DAVID L. ELLIOTT, JOSEPH DEAN MOORE AND DOUG VALENTINE, | ) ) ) ) ) | |
| Respondents, | ) ) | |
| vs. | ) ) ) | WD81978 |
| | ) | Opinion filed:  July 30, 2019 |
| THE CURATORS OF THE UNIVERSITY OF MISSOURI, | ) ) ) | |
| Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**
**THE HONORABLE JEFF HARRIS, JUDGE**

Before Division One:  Victor C. Howard, Presiding Judge,
Lisa White Hardwick, Judge and Gary D. Witt, Judge

The Curators of the University of Missouri (University) appeal the judgment in favor of Eric Scott, David Elliott, Joseph Moore, and Doug Valentine and the Coalition of Graduate Workers (CGW) (collectively Plaintiffs) finding that graduate workers are employees under Article I, section 29 of the Missouri Constitution and that CGW is the duly elected exclusive bargaining representative of graduate workers at the University and ordering the University to recognize and collectively bargain with CGW.  The judgment is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

**Factual and Procedural Background**

The trial court decided this case by summary judgment on the following stipulated facts. The University is a public institution of higher learning that offers graduate student programs in a variety of subjects to students pursuing advanced degrees. Many graduate students enrolled in the programs are graduate assistants, graduate teaching assistants, graduate research assistants, graduate instructors, graduate fellows, and graduate library assistants (collectively "graduate workers"). The primary duties of graduate workers include teaching three-hour classes, teaching five-hour classes, leading discussions or laboratory sections of a course, proctoring and grading large lecture exams, preparing and grading lab exams, assisting faculty with research and writing activities, helping students and faculty use microscopes, computers, and other lab equipment, teaching lab sections, keeping the library open and staffed, cataloging new acquisitions, and checking out assigned readings.

In return for this work, the University pays graduate workers a flat stipend or an hourly wage. The University requires that "[a]ny assignment of responsibilities, such as teaching a course, must be associated with fair and reasonable compensation" and prohibits volunteering for extensive service commitments to the academic programs. The minimum stipend for doctoral level graduate workers is $20,197.50 per year for academic year 2016-2017; for master's/specialist level graduate workers, the minimum stipend is $18,361.25 per year. The minimum hourly rate for doctoral level graduate workers is $19.80; for master's/specialist level graduate workers, it is $18.00. Payments to graduate workers are paid as earnings and taxed at the time of payment, and the federal government regards the payments as income for tax purposes.

Graduate faculty, administrative staff, or principal investigators supervise graduate workers. Supervisors must conduct a written evaluation of the graduate worker's performance at

2

least once a year and should consider specific criteria such as accurate and efficient completion of assigned tasks; independent work; analysis and problem solving; adequate evaluations by students for instructional and tutoring assignments in courses, laboratory, and clinical settings; cooperation with mentor, director, and other graduate workers; and professional and ethical behavior in all assigned tasks and duties, including course studies and research.

The University includes graduate workers in its workers' compensation coverage, which provides for the payment of medical expenses and compensation to any employee who sustains personal injuries arising out of, and in the course of, his or her employment. Graduate workers qualify for a student medical insurance subsidy that is credited to the workers' university accounts after enrollment in the insurance policy and eligibility has been verified. The University requires graduate workers to complete mandatory employee training on discrimination prevention and the Family Educational Rights and Privacy Act.

Individual Plaintiffs are enrolled in graduate studies at the University's Columbia campus and are graduate workers. Plaintiff CGW is an unincorporated labor organization.

On December 21, 2015, and January 6, 2016, CGW asked the University to hold an election for graduate workers on its Columbia campus to choose whether they wanted CGW to be their exclusive bargaining representative in collective bargaining with the University. The University denied the request. Despite the denial, CGW held such an election with the assistance of the League of Women Voters on April 18 and 19, 2016. The election ballot asked graduate workers whether they wanted CGW to serve as their exclusive representative in collective bargaining with the University or whether they wanted no representation. Approximately thirty percent of roughly 2,600 eligible graduate workers voted in the election, and eighty-four percent of the ballots cast were in favor of CGW serving as the exclusive collective bargaining representative of graduate

3

workers. Following the election, CGW sent a written communication to the University's chief of staff, and on May 6, 2016, the University's attorney notified counsel of CGW that CGW's request for recognition as bargaining agent for certain graduate students and commencement of bargaining was denied.

Plaintiffs subsequently filed the underlying action seeking declaratory judgment that graduate workers are employees within the meaning of article I, section 29 of the Missouri Constitution and asking the trial court to order the University to recognize and bargain with CGW as the exclusive bargaining representative for graduate workers. In the alternative, Plaintiffs sought a declaration that the University violated their rights under article I, section 29 by refusing to hold an election and asking the court to order the University to hold such an election.

The parties filed a joint stipulation of facts and cross motions for summary judgment. Following argument on the motions, the trial court granted Plaintiffs' motion and denied the University's. It found that graduate workers are employees under Article I, section 29 of the Missouri Constitution and that CGW is the duly elected exclusive bargaining representative of graduate workers at the University and ordered the University to recognize and collectively bargain with CGW. This appeal by the University followed.

**Standard of Review**

Appellate review of the grant of summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. Where an affirmative defense is raised, the movant must also show, beyond any genuine dispute, that the defense is legally insufficient. *Id.* at 383.

4

The record is reviewed in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record.  *Id.* at 376.

**Employees under Article I, Section 29**

In its first point on appeal, the University contends that the trial court erred in finding that graduate workers are employees under article I, section 29 of the Missouri Constitution.  It argues that graduate workers are more students than employees because they are only eligible for positions based on admission to their graduate degree programs, their work is done as students of those programs rather than employees, and their stipends and other remuneration come from a public institution.

Constitutional provisions are subject to the same rules of construction as other laws except they are given a broader construction because of their more permanent character.  *Am. Fed'n of Teachers v. Ledbetter*, 387 S.W.3d 360, 363 (Mo. banc 2012).  The primary rule in construing constitutional or statutory provisions is to consider words in their plain and ordinary meaning.  *StopAquila.org v. City of Peculiar*, 208 S.W.3d 895, 902 (Mo. banc 2006).  When a word is not defined, the court looks to the plain and ordinary meaning as found in the dictionary.  *Howard v. City of Kansas City*, 332 S.W.3d 772, 780 (Mo. banc 2011); *StopAquila.org*, 208 S.W.3d at 902.

Article I, section 29 of the Missouri Constitution provides that "employees shall have the right to organize and to bargain collectively through representatives of their own choosing."  In determining that this guarantee applies to both public and private sector employees, the Missouri Supreme Court explained:

> "Employees" plainly mean employees.  There is no adjective; there are no words that limit "employees" to private sector employees.  The meaning of section 29 is clear and there is, accordingly, no authority for this Court to read into the Constitution words that are not there.

5

*Independence-Nat'l Educ. Ass'n v. Independence Sch. Dist.*, 223 S.W.3d 131, 137 (Mo. banc 2007). Similarly, article I, section 29 contains no words limiting "employees" to employees who are not graduate students, and this court will not read into the provision such words.

Furthermore, the undisputed facts demonstrate that graduate workers are employees under its plain and ordinary meaning as found in the dictionary. "The word 'employee' is commonly defined as 'one employed by another, usually in a position below the executive level and usually for wages,' as well as 'any worker who is under wages or salary to an employer and who is not excluded by agreement from consideration as such a worker.'" *Howard*, 332 S.W.3d at 780 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 743 (1993)). "To 'employ' means 'to provide a job that pays wages or a salary or with a means of earning a living.'" *Id.* (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 743).

Graduate workers teach classes, lead discussions and lab sections, proctor and grade large lecture exams, prepare and grade lab exams, assist faculty with research and writing, and keep the library open and staffed. They perform this work for the University under the supervision of graduate faculty, administrative staff, or principal investigators. In return for this work, the University pays them a flat stipend or hourly wage. These payments are paid as earnings and taxed at the time of payment, and the federal government regards the payments as income for tax purposes. Moreover, the University repeatedly treats graduate workers as employees through its policy and practices. The University's rules and regulations classify graduate workers as employees with specific job titles. The University requires that "[a]ny assignment of responsibilities, such as teaching a course, must be associated with fair and reasonable compensation." It includes graduate workers in its workers' compensation coverage, providing that "[a]ll academic and non-academic employees of the University, both full-time and part-time,

(including student employees) are extended coverage." And finally, it requires graduate workers to complete employee training on discrimination prevention and the Family Educational Rights and Privacy Act.

The University urges this court to adopt the rationale of the National Labor Relations Board (NLRB) in *Brown University*, 342 NLRB 483 (2004), and of the dissent in *The Trustees of Columbia University in the City of New York*, 364 NLRB No. 90 (2016). In *Brown*, the Board, in a 3-2 decision, held that graduate student assistants are not employees for the purposes of collective bargaining under the Labor Management Relations Act. 342 NLRB at 490. It concluded that graduate student assistants are primarily students and have a primarily educational, rather than economic, relationship with their school. *Id.* at 487. It reasoned that graduate student assistants are students and must be enrolled in the school to be awarded the roles of teaching or research assistants, such roles are directly related to and constitute an integral part of their graduate educations, they perform their roles under the direction and control of the same faculty members that teach or advise them, and financial support is provided only to students and only for the period they are enrolled as students. *Id.* at 488-89. It further reasoned that collective bargaining would be detrimental to the educational process. *Id.* at 490, 493.

*Columbia University*, however, overruled *Brown University* twelve years later and held that student assistants who have a common-law employment relationship with their university are statutory employees under the Act. 364 NLRB at 1-2. It explained that the Act broadly defines employee to include any employee subject to certain specified exceptions, none of which addresses students employed by their universities. *Id.* at 1, 5. It found that student assistants who performed work, at the direction of the university, for which they were compensated are employees under the

7

Act regardless of whether that employment relationship co-exists with an educational or other non-economic relationship. *Id.* at 5-7. The Board reasoned:

> The fundamental error of the *Brown University* Board was to frame the issue of statutory coverage not in the terms of the existence of an employment relationship, but rather on whether some other relationship between the employee and the employer is the primary one—a standard neither derived from the statutory text of Section 2(3) nor from the fundamental policy of the Act.

*Id.* at 7. The dissenting Board member in *Columbia University* agreed with the reasoning in *Brown University* and again focused on the academic relationship between the student assistants and the university. *Id.* at 29-30.

The decisions of the NLRB are not binding here, though Missouri courts have considered such decisions interpreting the NLRA as potentially persuasive. *See Ledbetter*, 387 S.W.3d 360 (discussing the American history of collective bargaining). Regardless, the most recent NLRB decision, *Columbia University*, rejects the University's argument that graduate workers are different than other workers for purposes of collective bargaining because of their academic relationship with the University. More importantly, the University's argument ignores the plain and ordinary meaning of "employee" in article I, section 29. Article I, section 29 does not exclude employees who also happen to be students. There is simply "no authority…to read into the Constitution words that are not there." *Independence*, 223 S.W.3d at 137. The trial court correctly found that graduate workers are employees under article I, section 29 of the Missouri Constitution. The point is denied.

### CGW as Exclusive Bargaining Representative

In its next three points on appeal, the University contends that the trial court erred in requiring it to recognize and bargain with CGW as the exclusive bargaining representative for all graduate workers based on the election held by CGW. First, it asserts in point two that article I,

8

section 29 only gives individual employees the right to organize and bargain collectively but does not include the right to hold an election to select an exclusive bargaining representative. In point three, the University asserts that giving effect to an election conducted without the involvement of the University is impermissible because (1) it is entitled to participate in establishing the framework for and administering any election and (2) it did not forfeit its right to participate in any election. Finally in point four, the University argues that the record is insufficient to support the trial court's determination that CGW was properly elected the exclusive bargaining representative of graduate workers.

As discussed above, article I, section 29 of the Missouri Constitution gives employees "the right to organize and to bargain collectively through representatives of their own choosing," and this right applies to both private and public sector employees. *Ledbetter*, 387 S.W.3d at 363; *Independence*, 223 S.W.3d at 133. Missouri's public sector labor law, codified in section 105.500 *et seq.*, RSMo 2016,[1] and 8 CSR 40-2.010 *et seq.*, provides a procedural framework for collective bargaining for most public employees but expressly excludes certain professions such as teachers and law enforcement officers. *Ledbetter*, 387 S.W.3d at 363; *E. Mo. Coalition of Police, Fraternal Order of Police, Lodge 15 v. City of Chesterfield*, 386 S.W.3d 755, 760 (Mo. banc 2012); § 105.510. For most public employees, the public sector labor law allows employees to present proposals to the employer through their exclusive bargaining representative, requires an employer to "meet, confer, and discuss" such proposals with the representative, and requires results of the discussion to be reduced to writing and the proposal be presented to the employer for adoption, modification, or rejection. *Chesterfield*, 386 S.W.3d at 760; *Independence*, 223 S.W.3d at 138; § 105.520. The labor law grants the Board of State Mediation the authority to give effect to and

---

[1] The public sector labor law was substantially rewritten in 2018 by H.B. No. 1413.

implement the constitutional right to bargain collectively. *Degraffenrreid v. State Bd. of Mediation*, 379 S.W.3d 171, 179 (Mo. App. W.D. 2012); § 105.525. In accordance with section 295.070,[2] the Board has promulgated rules for choosing an exclusive bargaining representative. Under the rules, an exclusive bargaining representative may be voluntarily recognized by the employer or designated by the Board after a certification election. 8 CSR 40-2.010(C) & (H). Eight CSR 40-2.150 through 2.180 sets out the procedure for elections covering notices of elections, observers at the polls, challenges to voter eligibility, secret ballot, tallying of votes, election objections and investigation of objections, certification of election results, and run-off elections. An organization shall be certified as the exclusive bargaining representative if it receives a majority of the votes cast. 8 CSR 40-2.160(5). Under section 105.525, the Board shall resolve challenges to an election of an exclusive bargaining representative. *See also Chesterfield*, 386 S.W.3d at 764 n.7.

When a procedural framework for bargaining is not codified, i.e. for excluded employees, the lack of statutory procedures does not excuse public employers from their constitutional duty to bargain collectively with public employees. *Ledbetter*, 387 S.W.3d at 363; *Independence*, 223 S.W.3d at 136. The constitutional duty of public employers to bargain collectively requires them to "meet and confer" with collective bargaining representatives regarding working conditions and to bargain in good faith in doing so. *Ledbetter*, 387 S.W.3d at 367; *St. Louis Police Leadership Org. v. City of St. Louis*, 484 S.W.3d 882, 889 (Mo. App. E.D. 2016). "The absence of such a duty would render meaningless the rights guaranteed to public employees under article I, section 29." *Chesterfield*, 386 S.W.3d at 760.

---

[2] "The board shall by regulation prescribe the methods of procedure before it." § 295.070, RSMo 2016.

For excluded employees not covered by a collective bargaining statute, public employers have "a role in setting 'the framework for these public employees to bargain collectively through representatives of their own choosing.'" *W. Cent. Mo. Region Lodge #50 of Fraternal Order of Police v. City of Grandview*, 460 S.W.3d 425, 436 (Mo. App. W.D. 2015)(quoting *Independence*, 223 S.W.3d at 136). Employers have the "'ability to establish a procedural framework for collective bargaining with its excluded employees if necessary to effectuate its duty' to bargain collectively with the exclusive bargaining representative elected by the employees." *Id.* (quoting *Chesterfield*, 386 S.W.3d at 758). But beyond the clear but limited duty to "meet and confer" and to bargain in good faith, article I, section 29 does not require public employers to establish any specific procedural framework for facilitating collective bargaining with their employees. *St. Louis*, 484 S.W.3d at 889. "Article I, section 29 merely serves to protect an employee's right to bargain collectively and does not purport to require any specific procedures within which to conduct collective bargaining activities by either employees or employers." *Grandview*, 460 S.W.3d at 446-47. "In the absence of wording in the Constitution that limit[s] the [public employer's] discretion as to how collective bargaining is to be conducted, the courts are without authority to establish standards for bargaining unit constructs, election processes, and the appropriate subjects for bargaining." *Id.* at 447. Accordingly, Missouri courts have upheld challenged frameworks and procedures established by public employers as not infringing upon public employees' constitutional right to organize and bargain collectively under article I, section 29. *St. Louis*, 484 S.W.3d at 890; *Grandview*, 460 S.W.3d at 447.

Following the April 2016 election held by CGW, the University's attorney notified counsel of CGW on May 6, 2016, that CGW's request for recognition as bargaining agent for certain graduate students and commencement of bargaining was denied. In that letter, the University's

11

attorney raised the issue of whether some of the graduate workers in the bargaining unit were covered by the Missouri public sector labor law. Thereafter, Plaintiffs filed their petition for declaratory judgment requesting, in part, that the trial court order the University to recognize and bargain with CGW as the exclusive bargaining representative for graduate workers. The University asserted as an affirmative defense to the petition that some of the graduate workers were subject to the labor law and the exclusive jurisdiction of the Board.[3]

In their motion for summary judgment, Plaintiffs relied on *Eastern Missouri Coalition of Police, Fraternal Order of Police, Lodge 15 v. City of Chesterfield*, 386 S.W.3d 755, 760 (Mo. banc 2012), to argue that they were entitled to judgment as a matter of law on the issue whether the University must recognize CGW as the graduate workers' exclusive bargaining representative based on the April 2016 election. In *Chesterfield*, a majority of police officers and sergeants, employees excluded from the public sector labor law, in two different cities signed "representation interest cards" supporting the certification of Eastern Missouri Coalition of Police, Fraternal Order of Police, Lodge 15 (the union) as their exclusive representative for collective bargaining. 386 S.W.3d at 758. Thereafter, the union requested that each city voluntarily recognize the union's representative status and establish procedural framework for collective bargaining. *Id.* When the cities declined, the union filed two actions for declaratory judgment asserting the cities had an affirmative duty under the Missouri Constitution to establish a meaningful procedural framework allowing law enforcement employees to bargain collectively with their employers. *Id.*

The Missouri Supreme Court held that the trial court erred in ordering the cities to organize an election to designate the union as the exclusive bargaining representative. *Id.* at 764. It reasoned that because an undisputed majority of employees selected the union as their

---

[3] In the case of statutorily excluded employees, the choice of an exclusive bargaining representative may be challenged by the public employer or the employees in a court proceeding. *Chesterfield*, 386 S.W.3d at 764 n.7.

12

representative and because the election process was not challenged in the proceeding, holding an election was not an issue and it should not have been ordered. *Id.* Thus, the Court reversed the trial court's summary judgments and ordered the cities to recognize the union as the exclusive bargaining representative for the cities' police officers and sergeants and to collectively bargain with the union. *Id.*

*Chesterfield* is, however, distinguishable from the instant case. All of the employees in *Chesterfield* were law enforcement officers and, thus, were excluded from the public sector labor law. Their selection of an exclusive bargaining representative was not subject to the procedural requirements of the public sector labor law, and the cities had not established their own framework for such election. On the other hand, the stipulated facts in this case reveal that some graduate workers are teachers and some are not (researchers and library assistants). While the teachers, like the officers in *Chesterfield*, are excluded from the public sector labor law, the non-teachers are governed by it and subject to the specific procedures for electing an exclusive bargaining representative. § 105.510. The stipulated facts also show that graduate workers voted as one group in the April 2016 election held by CGW. The stipulated facts do not, however, show that the election was held in accordance with the Missouri public sector labor law, which governed the non-teachers in the group. To be entitled to summary judgment in this case, Plaintiffs are required to show that based on the undisputed facts, they are entitled to judgment as a matter of law. They are also required to show, beyond any genuine dispute, that the University's affirmative defense is legally insufficient. The undisputed facts regarding the election are few. Under them, Plaintiffs fail to show that they are entitled to judgment as a matter of law regarding the selection of CGW as the exclusive bargaining representative of graduate workers. The trial court's summary judgment on that issue is, therefore, reversed, and the case is remanded for further proceedings.

13

_____
VICTOR C. HOWARD, JUDGE

All concur.