COMITE ORGANIZADOR DE TRABAJADORES AGRICOLAS (COTA) (ALSO KNOWN AS THE AGRICULTURAL WORKERS ORGANIZING COMMITTEE), WILFREDO RIVERA CRUZ, ALEJANDRO SANTANA, HERIBERTO TORRES, RAMIRO NIEVE, MARTIN GARCIA SANTIAGO, WILLIAM ARROYO, NELSON DELGADO, FELIPE VELEZ, PASCUAL CHACON TORRES, FELIPE COLLAZO, GILBERTO MADERA, JOSE R. CRUZ, OSWALDO AVILES, LEANDRO RIVERA SOUFRONT, AND VIRGINIO ROSADO, PLAINTIFFS, v. SAUL LEVIN, DEFENDANT.

Superior Court of New Jersey
Chancery Division Cumberland County

Decided October 2, 1985.

*Richard A. Goldberg,* Esquire, Assistant Deputy Public Advocate, Attorney for Plaintiffs (*Alfred A. Slocum,* Acting Public Advocate)

*Rushton H. Ridgway,* Esquire, Attorney for Defendant (*Milstead & Ridgway*)

EDWARD S. MILLER, J.S.C.

This chancery action involves the right of a labor union to recognition by an employer, the majority of whose employees have joined it, to both recognition and to collective bargaining. The facts as developed are quite simple but must be laid out in chronological sequence:

1. On August 9, 1985, plaintiff union, Comite Organizador De Trabajadores Agricolas (herein designated COTA), also known as the Agricultural Workers' Organizing Committee, and fifteen (15) individuals, employees of defendant Saul Levin, a farmer in Rosenhayn, Cumberland County, New Jersey, filed the complaint in this action and obtained from this Court an order to show cause why the relief requested should not be granted. The relief requested included a court order requiring defendants to recognize COTA as the duly authorized and exclusive bargaining agent of defendants' employees, or, in the alternative, directing an election to be held by the New Jersey State Board of Mediation. The complaint also sought an injunction requiring defendants to "bargain and negotiate in good

faith" with plaintiffs and for a protective order enjoining defendants not to harass or interfere with the employees or their employment. The complaint was filed on behalf of plaintiffs by the Division of Public Interest Advocacy and the Department of the Public Advocate.

Defendant Saul Levin and his father, Isaac Levin, appeared, pursuant to notice required by *R.* 4:52–1. Upon conversation in chambers with the parties, it became apparent that no consent was to be granted so the Court forthwith took the bench and conducted further proceedings on the record. The Court issued an order to show cause restraining defendants from interfering with or harassing the employees during the pendency of the action, made the matter returnable on short notice, and advised defendants that they immediately needed counsel. As a matter of fact, defendants indicated that Harry Adler, a former judge of this Court, was their attorney and the Court immediately caused an associate of Harry Adler to be present in court and advised defendants *upon the record* that it was important that they conduct their business through an attorney and that the associate was there in order that he might be properly briefed.

On the return day of the order to show cause, August 16, 1985, defendants appeared without an attorney. Upon the Court querying Isaac Levin as to an attorney, Levin indicated that they did not have an attorney. The Court then heard the representations of the Public Advocate who was accompanied by all of the fifteen employees. The Court caused the employees to be sworn and they all indicated that they wanted the union to represent them. The Court then indicated that it was incumbent upon defendants to recognize the union and bargain with them, to which Isaac Levin then stated:

"My dear Judge, Your Honor, as much as I love you and as much as I love this Honorable Court, there will be—never be a union on my land."

The Court thereby issued an order directing defendants to recognize the union and upon their refusal, ordered them to be committed to the Cumberland County Jail until such time as they did sign a recognition agreement. Such an action is

neither punitive nor arbitrary, but is one of the time-honored remedies available both in general equity proceedings and those in lieu of the prerogative writ mandamus.

Because the Court was that day to go on vacation and since it was apparent that no useful purpose would be served by continuing the confinement of defendants, the Court that same day ordered defendants released, strongly urged their obtaining counsel, and again directed them to recognize COTA.

On August 22, 1985, plaintiffs, upon refusal of defendants to recognize COTA, filed a new order to show cause why defendants should not be held in contempt of the order of August 16. This order was returnable before Judge Samuel G. DeSimone, who postponed the proceedings until September 4.

On September 4, 1985, the parties again appeared before the Court, defendants being accompanied by their attorney, Rushton Ridgway. Upon the representation of defendant Saul Levin that his father, Isaac Levin, was not involved in the ownership or management of the farm, the Court entered an order dismissing Isaac Levin from the proceedings.

In view of the fact that defendant now was represented by counsel, the Court conceived that the interest of justice might be better served by affording defendant another evidentary hearing, notwithstanding the fact that one had already occurred. Testimony was taken from one witness, following which defendant offered to submit the matter to an election to be conducted by the State Board of Mediation. Since this was one of the alternative prayers for relief in the complaint, and further since plaintiffs concurred, the Court, in the presence of counsel, contacted the New Jersey State Board of Mediation and obtained its consent to an accelerated election and the Court entered an order providing that such election would be held under the auspices of the State Board of Mediation on September 27, 1985 and signed an order to that effect.

On September 27, 1985, the election scheduled for that date was postponed because of a hurricane which closed the courts

and most public business throughout the entire state. The election was duly held on September 29, 1985.

On September 30, 1985, the parties appeared before the Court and plaintiffs presented to the Court a certification from the State Board of Mediation to the effect that the election had been held; that fifteen persons were eligible to vote; that fourteen had voted and that the vote in favor of COTA was 14–0. The Court, thereupon, directed plaintiffs' attorney to prepare a judgment directing defendant to (a) recognize COTA as the sole and exclusive bargaining agent for the employees of defendant; and (b) directing defendant to bargain with said agent in good faith.

Defendant has conceded that the constitution of this state gives persons in private employment the right to organize and bargain collectively. Defendant contends that in this posture of events, however, the Court has no power to order defendant to do other than recognize the union and that that portion of the Court's order which directs defendant to bargain in good faith is improper. The latter is the sole question at issue in this case.

Unlike rights available to labor organizations under the federal law, which is purely statutory as provided in 29 *U.S.C.* § 141 *et seq.*, the Labor Management Relations Act of 1947, the rights of labor and labor organizations in New Jersey are embedded in basic constitutional law. Article I, paragraph 19 of the New Jersey Constitution, a part of the declaration of rights and privileges afforded our citizens, provides as follows:

19. Persons in private employment shall have the right to organize and bargain collectively. Persons in public employment shall have the right to organize, present to and make known to the State, or any of its political subdivisions or agencies, their grievances and proposals through representatives of their own choosing.

One would have thought this matter entirely set to rest by *Johnson v. Christ Hospital*, 45 *N.J.* 108 (1965), were it not for the argument advanced in the instant case that, while the employees herein had a right to organize, such right did not

infer a corresponding duty on the part of the employer to recognize or bargain. This is startling, not only in view of the flat statement in *Johnson*: "non-profit hospital employees and the properly chosen representatives of the employees are obliged to bargain in good faith with the objective of achieving mutual understanding and agreement as to wages, hours and conditions of employment. Good faith bargaining includes an awareness on the part of both parties and the special nature of the enterprise in which they are engaged, and of the special relation each bears to the public." *See also* the opinion of Judge Matthews in the Chancery Division in the same case, *Johnson v. Christ Hospital*, 84 *N.J.Super.* 541, 555, (Ch.Div. 1964):

> "It seems to me that to accept a contention of defendant which construes Article I, paragraph 19 to impose no affirmative duty upon an employer to bargain collectively with the representative of the employees renders impotent the rights guaranteed to employees under the constitutional provision. Clearly, this was not the intent of the authors of the provision."

Our courts are more fortunate in ascertaining the intent of the constitutional framers of the New Jersey Constitution than of the federal constitution wherein the primary source is only the notes of James Madison. The minutes and record of the Constitutional Convention have been preserved and it is therein disclosed that on Tuesday afternoon, August 5, 1947, Thomas Parsonnet, representing the New Jersey State Federation of Labor appeared before the Committee on Rights and Privileges at the Constitutional Convention and urged the adoption of the present paragraph 19. Included in his statements, significantly, is the following language:

> "We do not have the right to force employers to bargain with us by resort to peaceful court procedures. We must, in order to get employers—intrastate employers—to bargain with us, force them to do it by economic violence, and you should be the first to try to eliminate economic violence."

(Vol. III, Record, State of New Jersey Constitutional Convention of 1947, page 241).

Given the history of the labor movement in this country, and the record of the Constitutional Convention, the argument of

defendant in this case that he is not required to bargain in good faith sounds bizarre. The Constitution guarantees the right to organize and bargain collectively. To say that it does not confer upon the employer a corresponding duty to likewise bargain is preposterous. Surely, employees do not organize in order to conduct a sewing circle. Organization and collective bargaining, terms of art in the field, imply and impel an obligation to sit down at a bargaining table and bargain in good faith. To hold any other way would emasculate the constitutional provision. This Court declines to do so.

An order will be entered requiring defendant to recognize the COTA, in writing, and, further, to sit down with COTA or representatives thereof and engage in good faith collective bargaining.