AMERICAN FEDERATION
OF TEACHERS, et al.,
Appellants,

v.

Richard LEDBETTER, et
al., Respondents.

No. SC 91766.

Supreme Court of Missouri,
En Banc.

Nov. 20, 2012.

George O. Suggs and J. Christopher Chostner, Schichat, Cook & Werner, St. Loius, MO, for appellants.

Cindy Reeds Ormsby, Amy J. White and Darold E. Crotzer, Crotzer & Ormsby LLC, Clayton, MO, for respondents.

Ivan L. Schraeder and Corey L. Franklin, The Lowenbaum Partnership LLC, St. Louis, MO, for the Missouri Municipal League, which filed a brief as a friend of the Court.

PATRICIA BRECKENRIDGE, Judge.

The American Federation of Teachers, its St. Louis affiliate Local 420, and individual representatives, Mary Armstrong and Byron Clemens,[1] appeal the trial court's summary judgment declaring that the board of education of the Construction Career Center Charter School District and the individual members of the board [2] have no duty to "meet and confer" or to bargain collectively in good faith with the union. Because article I, section 29 of the Missouri Constitution provides that all employees, public and private, have a right to organize and to bargain collectively, it nec-

---

**1.** The American Federation of Teachers, Local 420 and the individual representatives are referenced collectively as "the union."

**2.** The board of education of the Construction Career Center Charter School District and the individual members of the board are collectively referenced as "the board."

essarily requires the board to meet and confer with the union, in good faith, with the present intention to reach an agreement. The judgment is reversed, and the cause is remanded.

### Facts and Procedural Background

After receiving formal recognition as the collective bargaining representative for all teachers and other certified employees, the union met and conferred with the board on 18 occasions between May 13, 2008, and April 9, 2009, to negotiate a collective bargaining agreement. In January 2009, the negotiators reached a tentative agreement for all issues except for salaries, but both parties recognized that the agreement was subject to ratification by the local union members and the board members. No agreement was finalized.

The board then discussed the labor negotiations and its tentative agreement during closed meetings in January, February, and March 2009. Advance notice of the meetings and a tentative agenda were posted 24 hours prior to each meeting at the board's meeting place. During its February 17, 2009, meeting, the board unanimously rejected the tentative labor agreement and instructed its negotiators to present a revised proposal to the union. At the March 30, 2009, meeting, the board resolved not to negotiate teacher tenure matters with the union and unilaterally adopted teacher salaries for the 2009–2010 academic year. No minutes or votes were recorded from those meetings.

The day following the board's March 30th meeting, the board's representatives met with the union, but it failed to mention salaries for the 2009–2010 school year. During an April 9, 2009, meeting between the board and union representatives, the board proposed teachers' salaries for the 2009–2010 school year and announced that contracts would be presented to teachers the next day. At the end of that meeting, the board agreed to extend its deadline by six days to allow the union to respond to its decision. On April 13, 2009, the union offered a counterproposal that the board rejected.

The union filed a petition for declaratory judgment asserting that the board violated the Missouri "sunshine law," section 610.010, *et seq.*, RSMo Supp.2011,[3] and failed to satisfy its duty to bargain collectively under article I, section 29. The case was submitted to the trial court on the parties' cross-motions for summary judgment. The trial court held that the Missouri Constitution imposes no duty on a public employer to "meet and confer" or to bargain in good faith with a collective bargaining representative. The trial court further found that, if there is a duty to bargain in good faith, the board did not bargain in "good faith" as that term is understood under federal labor law. Accordingly, the trial court granted summary judgment for the board. The union appeals.

### Standard of Review

■■■ The propriety of a grant of summary judgment is an issue of law that this Court reviews de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The criteria on appeal for testing the propriety of summary judgment are no different from those that should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* This Court reviews the record in the light most favorable to the party against whom judgment was entered. *Id.* Summary judgment is appropriate when the moving party has demonstrated, on the

---

**3.** All statutory references are to RSMo 2000 unless otherwise indicated.

basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. Rule 74.04(c)(6); *Grattan v. Union Elec. Co.*, 151 S.W.3d 59, 61 (Mo. banc 2004).

■ Because this case concerns a declaratory judgment, the trial court's decision will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Guyer v. City of Kirkwood*, 38 S.W.3d 412, 413 (Mo. banc 2001) (citing *McDermott v. Carnahan*, 934 S.W.2d 285, 287 (Mo. banc 1996); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

## Discussion

■ On appeal, the union claims that the trial court erred in declaring that employers do not owe a duty to bargain in good faith under article I, section 29. The union asserts that because it has a constitutional right to bargain collectively with the board, the board has a corresponding duty to bargain collectively in good faith with the union. Contrary to the trial court's judgment, the board concedes that it has an obligation to meet and confer with the union but asserts that such duty does not also impose the duty to bargain collectively in good faith.

■ Article I, section 29 of the Missouri Constitution provides that "employees shall have the right to organize and to bargain collectively through representatives of their own choosing." This guarantee applies to both public and private sector employees. *Independence–Nat. Educ. Ass'n v. Independence Sch. Dist.*, 223 S.W.3d 131, 133 (Mo. banc 2007). Missouri's public sector labor law, codified in section 105.500, *et seq.*, creates a procedural framework for collective bargaining for public employees, but it expressly excludes certain professions, including law enforcement officers and teachers. Section 105.510. When a procedural framework for bargaining is not codified, i.e., for excluded employees, the lack of a framework does not excuse the public employer from its constitutional duty to bargain collectively with public employees. *See Independence*, 223 S.W.3d at 136. When bargaining, "proposals are made and either accepted or rejected." *Id.* at 138. While the employer remains free to reject any proposal, *id.* at 136, the right to bargain collectively still requires " 'negotiations between an employer and the representatives of organized employees to determine the conditions of employment . . . ,' " *id.* at 138 n. 6 (quoting *Black's Law Dictionary* 280 (8th ed.2004)).

■ Unlike most states, Missouri does not have a statutorily imposed duty to bargain collectively in good faith. *See, e.g.*, Alaska Stat. § 23.40.110(a)(5); Cal. Gov.Code § 3543.5; Conn. Gen.Stat. § 10–153a(a); Del.Code Ann. § 4007(5); Fla. Stat. § 447.309(1). The question, then, is whether article I, section 29 requires public employers to bargain in good faith. "Constitutional provisions are subject to the same rules of construction as other laws, except that constitutional provisions are given a broader construction due to their more permanent character." *Neske v. City of St. Louis*, 218 S.W.3d 417, 421 (Mo. banc 2007), *overruled on other grounds by King–Willmann v. Webster Groves School Dist.*, 361 S.W.3d 414 (Mo. banc 2012). "Statutory construction is favored that avoids unjust or unreasonable results." *David Ranken, Jr. Tech. Inst. v. Boykins*, 816 S.W.2d 189, 192 (Mo. banc 1991), *overruled on other grounds by Alumax Foils, Inc. v. City of St. Louis*, 939 S.W.2d 907, 911 (Mo. banc 1997). In a constitutional context, "[a] constitutional provision should never be construed to work confusion and mischief unless no oth-

er reasonable construction is possible." *Theodoro v. Dept. of Liquor Control*, 527 S.W.2d 350, 353 (Mo. banc 1975).

■ Without an interpretation that imposes a duty to negotiate in good faith, the article I, section 29 right to bargain collectively would be nullified or redundant. Both of those results are unreasonable. The ultimate purpose of bargaining is to reach an agreement. *Independence*, 223 S.W.3d at 138; *City of Springfield v. Clouse*, 356 Mo. 1239, 206 S.W.2d 539, 543 (1947), *overruled by Independence*, 223 S.W.3d at 137 ("Surely the real purpose of such bargaining is to reach agreements and to result in binding contracts between unions representing employees and their employer."). If public employers were not required to negotiate in good faith, they could act with the intent to thwart collective bargaining so as never to reach an agreement—frustrating the very purpose of bargaining and invalidating the right.

Moreover, if the right did not include a duty for the public employer to negotiate in good faith, article I, section 29 would be reduced to the right to petition an employer for redress of grievances. In situations in which the employer is a government entity, that interpretation would make the right redundant because this goes no further than the limited right to petition the government already guaranteed by the First Amendment of the United States Constitution and article I, sections 8 and 9 of the Missouri Constitution. While debating section 29's application to public employees, delegates to Missouri's constitutional convention noted this distinction, finding that the right to bargain collectively was separate and different from rights of speech, petition, and press. *See 9 Debates of the 1943–1944 Constitutional Convention of Missouri* 2546–47 (2008).[4]

■ Most importantly, "collective bargaining," as a technical term, always has been construed to include a duty to negotiate in good faith—even when it was not required explicitly by statute. When the constitution employs words that long have had a technical meaning, as used in statutes and judicial proceedings, those words are to be understood in their technical sense unless there is something to show that they were employed in some other way. *Ex parte Bethurum*, 66 Mo. 545, 548 (1877). Section 1.090 ("Words and phrases shall be taken in their plain or ordinary and usual sense, but technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import.").

Evidence of this understanding may be found when examining the American history of collective bargaining. The governmental promotion of collective bargaining

4. Referencing the debates over article I, section 29, however, does not clarify what the right to collective bargaining entails. The debates only state that the goal of section 29 was to preserve the right from any future attack by the Legislature. 8 *Debates of the 1943–1944 Constitutional Convention of Missouri* 2517 (2008) ("If [article I, section 29] is in our Constitution we will preclude the possibility and the probability as has happened in the past [of], in future sessions of the legislature, many bills being introduced seeking to destroy collective bargaining."). They do not give any indication as to whether the right imposes an affirmative duty, a sword that can compel employers to bargain, or whether it created only a negative duty, a shield that prohibits public and private employers from impeding the organization of labor unions. In any case, the debates "neither add to nor subtract from the plain meaning of the constitution's words." *Independence*, 223 S.W.3d at 137. Therefore, this Court must look to the meaning of the words of the constitution as they generally were understood because "Missouri voters did not vote on the words used in the deliberations of the constitutional convention. The voters voted for the words in the Constitution. . . ." *Id.*

was born out of the economic emergency caused by the First World War. Russell A. Smith, *The Evolution of the "Duty to Bargain" Concept in American Law,* 39 Mich. L.Rev. 1065, 1067 (1941). In 1918, the President of the United States organized the War Labor Board in order to mediate and adjudicate labor disputes. *Id.* at 1068–69. Official policy at that time favored the collective bargaining process, but little, if any, attempt was made to define the extent of an implicit reciprocal duty in employers to bargain with employee representatives. *Id.* at 1069. Nevertheless, many of the War Labor Board's findings contained the following, or a similar, formula:

> As the right of the workers to bargain collectively through their chosen representatives is recognized by this board, the company should recognize and deal with such committees of their employees after they have been constituted by the employees.
>
> We recommend that when such shop committees are elected that the company representatives meet with them at an early date to take up differences that still exist *in an earnest endeavor* to reach an agreement on all points at issue. . . ."

*Amalgamated Meat Cutters & Butcher Workmen of Am. v. W. Cold Storage Co.,* Nat'l War Labor Bd. Docket No. 80 (1919) (cited in Smith, *The Evolution, supra,* at 1069–70) (emphasis added).

After World War I, the Transportation Act, passed by Congress, obligated employers in the railroad industry to "exert every reasonable effort and adopt every available means to avoid any interruption to the operation of any carrier growing out of any dispute between the carrier and the employees or subordinate officials." Transportation Act, Pub.L. No. 152, 41 Stat. 456, 469 (1920). That act also did not

contain an explicit duty to bargain in good faith, but the Railroad Labor Board still found that collective bargaining required more than a mere "perfunctory performance of the statute." *Internat'l Ass'n of Machinists,* 2 R.L.B. 87, 89 (1921). Indeed, The Railroad Labor Board found that collective bargaining "requires an *honest effort* by the parties to decide in conference." *Id.* (emphasis added).

The requirement of good faith in collective bargaining was reaffirmed by Congress' adoption of the National Industrial Labor Act. Pub.L. No. 67, 48 Stat. 195 (1933). Section 7(a) of that act specifically notes that "employees shall have the right to organize and bargain collectively through representatives of their own choosing." Although this act, once again, did not explicitly include a duty to bargain in good faith, *id.* at 198, the National Labor Board, an administrative board that served as short-lived precursor to the National Labor Relations Board, found in 1934 that good faith was implicit to collective bargaining. *Connecticut Coke Co.,* 2 N.L.B. 88, 89 (1934). It found that the statute required more than simply "meet[ing] and confer[ring]" with employee representatives because

> [t]rue collective bargaining involves more than the holding of conferences and the exchange of pleasantries. It is not limited to the settlement of specific grievances. . . . While the law does not compel the parties to reach agreement, *it does contemplate that both parties will approach the negotiations with an open mind and will make a reasonable effort to reach a common ground of agreement.*

*Id.* (emphasis added). A short while later, the newly organized National Labor Relations Board held that the duty of an employer to bargain collectively requires the employer "to negotiate *in good faith* with

his employees' representatives; to match their proposals, if unacceptable, with counter-proposals; and to make every reasonable effort to reach an agreement." *Houde Engineering Corp.*, 1 N.L.R.B. (old) 35 (1934) (decided by the National Labor Relations Board organized under Pub. Res. No. 44, 48 Stat. 1183 (1934)).

By 1935, Congress enacted new labor relations laws through the National Industrial Recovery Act, again without adding an explicit obligation to negotiate in "good faith." National Labor Relations Act, Pub.L. No. 198, 49 Stat. 449, 452 (1935). However, the National Labor Relations Board continued to find that good faith was an implicit component of collective bargaining. *Atlantic Refining Co.*, 1 N.L.R.B. 359, 368 (1935) ("Collective bargaining means more than the discussion of individual problems and grievances with employees or groups of employees. It means that the employer is obligated to negotiate *in good faith* with his employees as a group, through their representatives . . . ." (emphasis added)); *Atlas Mills*, 3 N.L.R.B. 10, 21 (1937) ("[I]f the obligation of the Act is to produce more than a series of empty discussions, bargaining must mean more than mere negotiation. It must mean negotiation with a *bona fide* intent to reach an agreement if agreement is possible."); *Globe Cotton Mills*, 6 N.L.R.B. 461, 467 (1938) ("The term collective bargaining denotes in common usage, as well as in legal terminology, negotiations looking toward a collective agreement."); *Inland Steel Co.*, 9 N.L.R.B. 783, 797 (1938) ("If *honest and sincere bargaining efforts* fail to produce an understanding on terms, nothing in the Act makes illegal the employer's refusal to accept the particular terms submitted to him." (emphasis added)); *Highland Park Mfg. Co.*, 12 N.L.R.B. 1238, 1248–49 (1939) ("The duty [to bargain collectively] encompasses an obligation to enter into discussion and negotiation *with a fair mind and with a sincere purpose* to find a basis of agreement. . . ." (emphasis added)).

By 1945, when article I, section 29 was adopted as part of Missouri's current constitution, the words "bargain collectively" were common usage for negotiations conducted in good faith and looking toward a collective agreement. In fact, national labor laws did not explicitly include an employer's corresponding duty to bargain in good faith until 1947, when Congress amended the National Labor Relations Act. Robert P. Duvin, *The Duty to Bargain: Law in Search of Policy*, 64 Colum. L.Rev. 248, 255–56 (1964) (citing Labor Management Relations Act (Taft–Hartley Act) § 8(d), Pub.L. No. 101, 61 Stat. 136, 142 (1947)).

Furthermore, since the adoption of Missouri's constitution, courts continue to recognize the essential role of good faith in collective bargaining. In 1951, the United States Supreme Court recognized that the "performance of the duty to bargain requires more than a willingness to enter upon a sterile discussion of union-management differences." *N.L.R.B. v. American Nat'l Ins. Co.*, 343 U.S. 395, 402, 72 S.Ct. 824, 96 L.Ed. 1027 (1951). Indeed, the Court found that, under national labor laws, collective bargaining requires an employer " 'to negotiate in good faith with his employees' representatives; to match their proposals, if unacceptable, with counter-proposals; and to make every reasonable effort to reach an agreement.' " *Id.* (citing *Houde Engineering*, 1 N.L.R.B. (old) at 35). Finally, and in a much more modern context, the New Jersey Superior Court held that its state's constitutional guarantee for collective bargaining imposes a corresponding duty of good faith on employers:

To say that [the right to bargain collectively] does not confer upon the employ-

er a corresponding duty to likewise bargain is preposterous. Surely, employees do not organize in order to conduct a sewing circle. Organization and collective bargaining, terms of art in the field, imply and impel an obligation to sit down at a bargaining table and bargain in good faith. To hold any other way would emasculate the constitutional provision. *Comite Organizador De Trabajadores v. Levin,* 212 N.J.Super. 362, 515 A.2d 252, 255 (1985). Consequently, because article I, section 29 of Missouri's constitution imposes on employers a duty to meet and confer with collective bargaining representatives, employers must also engage in the bargaining process in good faith.

 Under Missouri law, " 'good faith' is not an abstract thing, but 'is a concrete quality, descriptive of the motivating purpose of one's act or conduct when challenged or called in question.' "[5] *Krone v. Snapout Forms Co.,* 360 Mo. 821, 230 S.W.2d 865, 869 (1950) (quoting *Municipal Bond & Mortgage Corp. v. Bishop's Harbor Drainage Dist.,* 154 Fla. 246, 17 So.2d 226, 227 (1944)). Parties act in "good faith" when they act "without simulation or pretense, innocently and in an attitude of trust and confidence. . . ." *State ex rel. West v. Diemer,* 255 Mo. 336, 164 S.W. 517, 521 (1914). Those parties act "honestly, openly, sincerely, without deceit, covin, or any form of fraud." *Id.* Consequently, the course of a negotiation between parties acting in good faith should reflect that both parties sincerely undertook to reach an agreement. While there is an inherent tension between the duty to bargain with a serious attempt to resolve differences and the employer's freedom to reject any proposal, this tension serves to strike the balance intended by the voters of Missouri in their adoption of article I, section 29.

## Conclusion

As recognized in *Independence,* article I, section 29 of the Missouri Constitution grants public employees the "right to bargain collectively," requiring public employers to "meet and confer" regarding working conditions, even though it is not required to make an agreement with employees. *Independence,* 223 S.W.3d at 137. This requirement in article I, section 29 inherently includes the obligation that public employers act in good faith because otherwise public employers could act with the intent to thwart collective bargaining so as never to reach an agreement, frustrating the very purpose of bargaining and invalidating the right. Consequently, the trial court erred in finding that the board had no duty to meet and confer with the union and, further, that it had no duty to bargain collectively in good faith. The trial court further erred in its conditional finding that the board had not bargained in good faith because that finding considered only "good faith"

---

**5.** The union argues that Missouri's adoption of article I, section 29 evinces an intent to adopt the same duty of good faith in collective bargaining as under settled federal labor law. In support of this assertion, the union points to the fact that the National Labor Relations Act predates Missouri's 1945 constitution and that the language of the Missouri Constitution appears to be taken from section 7 of the NLRA. *Compare* article I, section 29 *with* 29 U.S.C. § 157 (2006) (granting to employees the right "to bargain collectively through representatives of their own choosing"). The NLRA, by its own provisions, specifically excludes its application to employees of "any State or political subdivision." 29 U.S.C. § 152(2); *Independence–NEA,* 223 S.W.3d at 139. Federal law and cases can give guidance to the extent they are consistent with Missouri law, but cases interpreting federal statutes are not binding with regard to this Court's interpretation of Missouri law. *See Daugherty v. City of Maryland Heights,* 231 S.W.3d 814, 818–19 (Mo. banc 2007).

as that term is understood under federal law. This case must be remanded for adjudication of whether the board negotiated in good faith under Missouri law, including a determination of whether there are disputed issues of fact under this standard.

The judgment of the trial court is reversed, and the case is remanded.

TEITELMAN, C.J., RUSSELL and STITH, JJ., and HARTENBACH, Sr.J., concur.

FISCHER, J., dissents in separate opinion filed.

DRAPER, J., not participating.

ZEL M. FISCHER, Judge.

I respectfully dissent from the principal opinion. The principal opinion holds that, under article I, section 29, of the Missouri Constitution, Missouri employers have an affirmative duty to collectively bargain that inherently creates a duty to meet and confer and negotiate in good faith with the present intention to reach an agreement. The plain language of article I, section 29, does not create these affirmative duties on the part of public school boards. Rather, article I, section 29, serves to guarantee the right of Missouri employees to organize and to choose a representative through which they intend to bargain; article I, section 29, imposes no affirmative duty on any public employer.[1]

**Standard of Review**

This Court's standard of review for a circuit court's grant of summary judgment is de novo. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Co.*, 854 S.W.2d

371, 376 (Mo. banc 1993). "The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment." *Id.* This Court reviews the record in the light most favorable to the party against whom judgment was entered. *Id.* Summary judgment is appropriate when the moving party has demonstrated that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Rule 74.04(c)(6).

**Analysis**

A. *The Affirmative Duty to Meet and Confer and to Negotiate in Good Faith*

The principal opinion holds that Missouri employers have an affirmative duty to meet and confer with their employees and to negotiate in good faith with the present intention to reach an agreement. This duty, according to the principal opinion, derives from the right to "bargain collectively" created in article I, section 29, of the Missouri Constitution. In order to justify this new interpretation of article I, section 29, the principal opinion quotes the often-used rule of construction "a court will read a constitutional provision broadly," Op. at 363–64, but what is missing from the principal opinion's analysis is "the rest of the story," to quote Paul Harvey, when a court is required to interpret a constitutional provision.

While a court will read a constitutional provision broadly, it cannot ascribe to it a meaning that is contrary to that clearly intended by the drafters. Rath-

1. *See also Eastern Missouri Coalition of Police, Fraternal Order of Police, Lodge 15 v. City of Chesterfield* (consolidated with) *Eastern Missouri Coalition of Police, Fraternal Order of Police, Lodge 15 v. City of University City,* 386 S.W.3d 755 (Mo. banc 2012) (decided November 20, 2012, Nos. SC91736 and SC91737, Judge Fischer dissenting).

er, a court must undertake to ascribe to the words of a constitutional provision the meaning that the people understood them to have when the provision was adopted.

*Farmer v. Kinder,* 89 S.W.3d 447, 452 (Mo. banc 2002).

The principal opinion holds that section 29 would be "nullified or redundant" if it did not impose a duty on employers to meet and confer and negotiate in good faith. Because the plain language of this provision, a review of the constitutional debates that took place at the time the provision was adopted, and review of this Court's cases do not impose an affirmative duty on employers, I do not agree.

The purpose of article I, section 29, "was to declare that such rights of collective bargaining were established in this state. It means that employees have the right to organize and function for a special purpose: namely, for the purpose of collective bargaining." *Quinn v. Buchanan,* 298 S.W.2d 413, 417 (Mo. banc 1957). This view is supported by the debates over the Missouri Constitution of 1945 in that the supporters of article I, section 29, envisioned the provision as guaranteeing that the right to organize and bargain collectively would be free from legislative interference. *See 8 Debates of the 1943–1944 Constitutional Convention of Missouri* 2517 (1943–1944). The Honorable R.T. Wood, one of the provision's main supporters, stated, "If [article I, section 29] is in our Constitution we will preclude the possibility and the probability as has happened in the past [of], in future sessions of the Legislature, many bills being introduced seeking to destroy collective bargaining." *Id.* Wood argued that article I, section 29, would be a "measure of protection" that members of organized labor would "have the same right to organize and bargain collectively in our own interest

as every other organization and every other group." *Id.* It is perplexing, to say the least, that the principal opinion is willing to look to no fewer than four federal statutes to seek guidance as to what article I, section 29, meant when it was adopted rather than the actual discussion by the people who adopted the provision when it was adopted.

The principal opinion greatly expands the clear and express language of article I, section 29, into a "labor relations act." This Court has consistently held that article I, section 29, "is not a labor relations act, specifying rights, duties, practices and obligations of employers and labor organizations." *Quinn,* 298 S.W.2d at 418. "[T]he constitutional provision provides for no required affirmative duties concerning this right...." *Id.* at 419. Article I, section 29, was adopted as part of the Missouri Constitution to guarantee the right of employees "to organize and to bargain collectively through representatives of their own choosing." In this role, article I, section 29, has been understood to protect employees from coercion by their employer, undesired unions, or other entities that may attempt to coerce them into, or out of, union activity. *See Quinn,* 298 S.W.2d at 419 (enjoining an employer from engaging in activity designed to prevent its employees from organizing); *Bellerive Country Club v. McVey,* 365 Mo. 477, 284 S.W.2d 492, 501 (1955) (enjoining union picketing designed to force an employer to coerce its employees into joining the union). Article I, section 29, has never been found to require any affirmative duty on the part of an employer, either public or private. *Quinn,* 298 S.W.2d at 419. This Court held, "**It is evident that the constitutional provision guaranteeing employees the right to organize and bargain collectively through representatives of their own**

choosing does not cast upon all employers a correlative obligation." *Id.*

The principal opinion's new interpretation of article I, section 29, to require employers to meet and confer and negotiate in good faith with the present intention to reach an agreement, goes beyond the plain language of the provision and imposes an affirmative duty where one has never before existed. Article I, section 29, does not impose a duty on employees to "bargain collectively in good faith" as the principal opinion holds.[2] "While a court will read a constitutional provision broadly, it cannot ascribe to it a meaning that is contrary to that clearly intended by the drafters. Rather, a court must undertake to ascribe to the words of a constitutional provision the meaning that the people understood them to have when the provision was adopted." *Farmer v. Kinder*, 89 S.W.3d 447, 452 (Mo. banc 2002).

In my view, the plain language of article I, section 29, does not require employers to negotiate at all. The provision reads: "employees shall have the right to organize and to bargain collectively through representatives of their own choosing." The provision does not include the words, "meet and confer." Nor does it include the words "duty to negotiate," "good faith," or any other phrase imposing an affirmative duty on employers.

The principal opinion asserts that collective bargaining "always has been construed to include a duty to negotiate in good faith;" thus, article I, section 29, must include a requirement to meet and confer and negotiate in good faith. Op. at 364. To support this proposition, the principal opinion relies on a number of federal laws and agency decisions, including the Transportation Act of 1920, the National Indus-

trial Labor Act, the National Labor Relations Act, and decisions of the National War Labor Board and the National Labor Relations Board. There is a fundamental difference, however, between these federal acts and agency decisions relied on by the principal opinion and article I, section 29, of the Missouri Constitution. The federal authority quoted by the principal opinion was put in place by Congress to *facilitate the process* of collective bargaining. In facilitating bargaining, the federal government made a policy choice to require good faith negotiations. It did so either expressly through statute or through agency decision—not by judicial mandate based on a judicial philosophy that changes the meaning of a state constitutional provision over time.

But article I, section 29, was not, and is not, designed to facilitate the process of collective bargaining. As noted previously, article I, section 29, was designed to protect from legislative or employer interference the right of employees to organize and bargain through a representative of their own choosing. It was not included in the constitution to establish a process to resolve all the labor relations issues of public school teachers. It is not appropriate for this Court to ascribe a new meaning that is contrary to what was intended by the drafters and those who approved its adoption. *Farmer*, 89 S.W.3d at 452. Further, the longstanding understanding of article I, section 29, does not render it a nullity because it serves to protect the right to bargain collectively rather than to set out the scheme through which such bargaining should occur. *Quinn*, 298 S.W.2d at 417.

---

**2.** In fact, the public sector law that sets out the procedural framework, including meet and confer procedures for most public employers, does not expressly include a "good faith" requirement.

The plain language of article I, section 29, protects employees' rights to organize and to bargain collectively through representatives of their own choosing. Neither the state, nor any labor union, nor any employer may infringe on these rights. This constitutional provision was never intended to actually facilitate a collective bargaining process as does the National Labor Relations Act or Missouri's public sector labor law. While requiring employers to meet and confer and negotiate in good faith may, or may not, be good policy, "[t]there is no authority for this Court to read into the Constitution words that are not there." *Independence–Nat'l Educ. Ass'n v. Independence Sch. Dist.*, 223 S.W.3d 131, 137 (Mo. banc 2007). The principal opinion's redefining of our state constitutional provision, which was adopted to authorize an employee to choose a representative to collectively bargain, to now create an affirmative duty on all employers to "meet and confer with the union, in good faith, with the present intention to reach an agreement" fails to consider all of the practical ramifications now placed on statewide private employers, in addition to public employers. *American Federation of Teachers v. Ledbetter*, 387 S.W.3d 360, 362 (Mo. banc 2012) (decided November 20, 2012, No. SC91766). *See also Eastern Missouri Coalition of Police, Fraternal Order of Police, Lodge 15 v. City of Chesterfield* (consolidated with) *Eastern Missouri Coalition of Police, Fraternal Order of Police, Lodge 15 v. City of University City*, 386 S.W.3d 755, 758 (Mo. banc 2012) (decided November 20, 2012, Nos. SC91736 and SC91737).

This Court's precedent demonstrates that article I, section 29, had, and continues to have, meaning and utility without the requirement of good faith bargaining. Employees in Missouri are free to organize and to choose a representative through whom to bargain. In this role, article I, section 29, serves to protect employees from coercion by employers and by undesired unions. It also serves to protect from legislative interference the right to organize. This is so because "[t]he constitutional provision was shaped as a shield; the union seeks to use it as a sword." *Quinn*, 298 S.W.2d at 419.

In *Quinn v. Buchanan*,[3] this Court held that article I, section 29, protected a handful of employees after they were terminated for engaging with a union. *Quinn*, 298 S.W.2d at 419. The employer was enjoined from "coercing his employees into withdrawing from the union and rescinding their authorization to it to act as their collective bargaining representative and also from otherwise interfering

**3.** The principal opinion in *Eastern Missouri Coalition of Police, Fraternal Order of Police, Lodge 15 v. City of Chesterfield*, 386 S.W.3d 755 (Mo. banc 2012) (decided November 20, 2012, Nos. SC91736 and SC91737), issued contemporaneously with this opinion, found it necessary to overrule *Quinn* to get to its desired result. For reasons more fully detailed in the dissent to that opinion, I do not agree that *Quinn* should be overruled. The principal opinion found that *Quinn* relied on the erroneous assertion that because article I, section 29 was found in the "Declaration of Rights" of the Missouri Constitution, it could not create any affirmative rights. But *Quinn* held that individuals could enforce any right granted by article I, section 29, through any common law or code remedy. The principal opinion merely disagreed with *Quinn*'s assertion that article I, section 29 did not impose any affirmative duties on an employer to bargain with its employees. *Quinn* did not base this holding solely on article I, section 29's placement in the Declaration of Rights, but also on the provision's clear intent to guarantee a right rather than to establish a labor relations act. *Quinn* also relied on what the framers of article I, section 29, intended when the provision was adopted, which is, of course, sound judicial reasoning. *Farmer*, 89 S.W.3d at 452.

with these employees' rights to freely choose the union as their collective bargaining representative." *Id.* The Court held that the employees were not entitled to requested relief that would "require defendant to recognize and bargain with the union." *Id.* The Court specifically stated, "It is evident that the constitutional provision guaranteeing employees the right to organize and bargain collectively through representatives of their own choosing does not cast upon all employers a correlative obligation." *Id.* (emphasis added). *Quinn* indicates that article I, section 29, is intended to protect employees from coercion, but explicitly states that employers need not bargain. *Quinn* specifically held, "Thus implementation of the right to require any affirmative duties of an employer concerning [the right to bargain collectively] is a matter for the legislature." *Id.* at 419.

In *Quinn*, this Court held the employer's actions in attempting to prevent its employees from organizing violated article I, section 29, but the employer's refusal to bargain did not. *Id.* at 419. In a rare speaking order to ensure there was no misunderstanding or confusion created by this Court's opinion, the order overruling the motion for rehearing stated:

> Sec. 29, Art. I of our Constitution ... does not purport to *require* collective bargaining by either employees or employers. The right it gives to employees is the right to organize for the purpose of collective bargaining through representatives of their own choosing. Whether or not employers and organized employees can bargain or reach an agreement depends upon the willingness of both just as in the case of bargaining for any kind of contract between other persons who have the right to make contracts. Perhaps modern industrial conditions make desirable more than that for

> best labor relations but that is a matter for the Legislature.

*Id.* at 420 (internal citations omitted). There is nothing in the text of article I, section 29, the debates concerning the adoption of article I, section 29, or this Court's prior interpretation of article I, section 29, that suggests this Court should not continue to follow *Quinn*. *Quinn* was not overruled nor modified in any way by this Court's holding in *Independence–Nat'l Edu. Ass'n v. Independence Sch. Dist.*, 223 S.W.3d 131 (Mo. banc 2007).

Moreover, cases both before and after *Quinn* demonstrate the same understanding of the right. In *Smith v. Arthur C. Baue Funeral Home*, the Court, citing *Quinn*, held if an employer discharges an employee for engaging in union activities, that is a wrongful discharge under article I, section 29, and the employee is entitled to damages. 370 S.W.2d 249, 254 (Mo. 1963). This was so because the employee has a constitutional right "to choose collective bargaining representatives to bargain for him concerning his employment." *Id.* In *Bellerive Country Club v. McVey*, this Court enjoined union picketing where it found that the picketing was designed to force an employer to coerce non-union employees of a private country club to join the union. 365 Mo. 477, 284 S.W.2d 492, 501 (1955). In that case, this Court stated, "We think it is clear that the right guaranteed to employees by [article I, section 29], 'to organize and to bargain collectively through representatives of their own choosing' is a free choice, uncoerced by management, union, or any other group or organization." *Id.* at 500.

Nothing in *Independence–National Education Ass'n v. Independence School District* serves to alter this understanding of article I, section 29. In *Independence*, this Court held that public employees were

protected by article I, section 29, to the same extent that private employees were protected. 223 S.W.3d 131, 139 (Mo. banc 2007). *Independence* does not hold, however, that article I, section 29, requires employers to bargain with their employees.

The *Independence* Court discussed three points in reaching the conclusion that article I, section 29, extends to public employees. First, the Court found that extending article I, section 29, to public employees does not constitute legislative delegation because employers are not required to agree to any proposals made by employees.[4] *Id.* at 135–36. If the public entity can reject all proposals, it can "use its governing authority to prescribe wages and working conditions," and "none of the public entity's legislative or governing authority is being delegated." *Id.* at 136. This finding is completely consistent with *Quinn* and with the concept of article I, section 29, that it supports—employers need not bargain with employees. It is difficult to understand how an employer who is "free to reject any and all proposals made by the employees" must comply with all of the mandates of the principal opinion. *Id.* at 138.

The Court then evaluated the plain meaning of article I, section 29. *Id.* at 137–39. It concluded that " '[e]mployees' plainly means employees . . . there are no words to limit 'employees' to private sector employees." *Id.* at 138. The Court then noted that it did not have the authority to read words into the Constitution when the meaning is clear, *id.*, which is exactly what the principal opinion in this case does by requiring public entities to meet and con-

fer and bargain in good faith. In my view, this Court still does not have the authority to read words into the Constitution and particularly to read words into the Constitution that drastically redefine the long established meaning of its actual words.

The Court in *Independence* discussed the extent of the constitutional right. *Id.* at 139. It attempted to define "collective bargaining" using, in part, the public sector labor law, but found neither that law, nor the cases interpreting it, defined "collective bargaining." *Id.* The Court noted that "the point of bargaining, of course, is to reach agreement," but stopped short of holding that article I, section 29, requires an employer to bargain with employees. *Id.* The Court then noted, again, that an employer need not agree with any employees—whether collective or individual—before leaving the question of what "collective bargaining" means unanswered. *Id.* 138–39.

The *Independence* Court's single holding on the issue was: **"In any event, article I, section 29 applies to 'employees,' regardless of whether they are in the private or public sector, and nothing in this constitutional provision requires public employers to reach agreements with their employee associations."** *Id.* at 139. This express holding in *Independence* in no way requires employers to bargain with their employees. Rather, it extends the rights guaranteed by article I, section 29, to public employers. No more, no less.

Moreover, the language from *Independence* cited in the principal opinion relating to procedural frameworks for bargaining,

4. The proposals discussed in *Independence* were proposals required by the public sector labor law found at section 105.500, *et seq.*, RSMo 2000. *Independence*, 223 S.W.3d at 136. Section 105.510 allows public employees to present proposals to their employer, and section 105.520 requires a public entity to meet and confer with its employees after such proposals are presented. Article I, section 29, does not, by its plain language, require an employer to entertain the proposals of its employees.

the duty to bargain, and the need to "meet and confer," Op. 363–64, 367–68, comes from the *Independence* Court's discussion of the public sector labor law, as interpreted in *State ex rel. Missey v. City of Cabool,* 441 S.W.2d 35 (Mo. banc 1969). The duty to "meet and confer" comes from section 105.520, RSMo 2000, not from article I, section 29. The *Independence* Court discussed this section in attempting to define "collective bargaining," but it never held that the duty to "meet and confer" is found in, or required by, article I, section 29. Any affirmative duty placed on public school boards to meet and confer in good faith with a present intention to reach an agreement is entirely a new creation by the principal opinion in this case.

This Court's prior cases demonstrate that article I, section 29, is not nullified or redundant if it does not impose a duty to negotiate in good faith as the principal opinion asserts. Op. at 364. *Quinn* demonstrates that the provision guarantees employees the right to be free from coercion in their choice to organize and bargain. And it serves to prevent legislative interference with this right. It is also significant that collective bargaining, and organization for that purpose, was unlawful before it was authorized by labor regulations or constitutional provisions. *Independence,* 223 S.W.3d at 139. Article I, section 29, serves an important role in legalizing collective bargaining and in keeping that right protected. These rights are certainly more than, and different from, the right to petition the government for a redress of grievances. Op. at 364. The mere fact that "union-busting" activities, such as those discussed in *Quinn,* may not be as prevalent in 2012 does not render article I, section 29, a redundant nullity, and it does not justify this Court ascribing a meaning to the provision it does not have.

## B. Separation of Powers

The principal opinion's decision raises serious separation of powers concerns. Article II, section 1, of the Missouri Constitution codifies the separation of powers doctrine in Missouri. The provision states:

> The powers of government shall be divided into three distinct departments— the legislative, executive and judicial— each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted.

The role of this Court in reviewing the constitutional validity of legislative or executive action traditionally has been to declare whether or not the legislature's or executive's action is constitutional. This function derives from the Court's duty to make final determinations of questions of law. *Asbury v. Lombardi,* 846 S.W.2d 196, 200 (Mo. banc 1993) ("The quintessential power of the judiciary is the power to make final determinations of questions of law."). If a legislative or executive action conflicts with a constitutional provision, this Court must hold the action invalid. *State ex inf. Nixon v. Kinder,* 89 S.W.3d 454, 459 (Mo. banc 2002). In many cases, the declaration of this Court will render a statute or an action void, leaving it up to the legislature to decide whether or not to attempt to pass a similar, but constitutionally acceptable, replacement statute. Similarly, when legislative inaction is declared unconstitutional, it is the role of the legislature to decide the best way to comply with the constitution. This is true because the legislature is the proper branch of government to make policy decisions. *Parktown Imports, Inc. v. Audi of Am., Inc.,* 278 S.W.3d 670, 674 (Mo. banc 2009).

When there are multiple answers to a question, the legislature is the appropriate branch to choose the best one.

The principal opinion goes beyond its authority by requiring public schools to meet and confer and negotiate in good faith with the present intention to reach an agreement.[5] Arguably, this mandate requires more of the school boards than is required under the public sector labor law of all other public employers.[6] In the second instance, it is for the local school boards to decide, as a matter of policy, if, and when, they desire to negotiate with the representative selected by the teachers to collectively bargain. This Court does not have the authority to mandate the creation of procedures to facilitate collective bargaining.[7]

## Conclusion

The principal opinion treads on the legislative role of public school boards and violates the separation of powers principles embodied by article II, section 1. In *Independence* a majority of this Court reversed decades of this Court's jurisprudence by interpreting article I, section 29, to recognize the right of public employees to collectively bargain.[8] That right guarantees public employees the freedom of choice in whether or not to organize for the purpose of collective bargaining and who they want to represent them in the process. Article I, section 29, does not impose any affirmative duty on Missouri public schools, but, rather, requires only that they recognize their employees' right to collectively bargain.

---

5. In my view, the principal opinion may have failed to consider all of the existing statutory obligations imposed on public schools that may limit a school board's ability to bargain in the same fashion as private employers. For instance, section 168.126, RSMo, provides that public schools must notify any public school teacher who will not be retained of his or her termination by April 15th. If the school board fails to timely notify the teacher of his or her termination, then that teacher is deemed to be appointed for the next school year. Section 168.126 also requires public school boards to tender a contract to all probationary teachers by May 15th. Public entities must also prepare an annual budget that estimates all revenues and expenditures for the coming year. Section 67.010, RSMo 2000. The estimated expenditures may not exceed the total estimated revenues. *Id.* The need for public entities to comply with these and other similar statutory obligations may limit the bargaining opportunities of governmental bodies or explain perceived refusals to bargain by public entities.

6. The public sector labor law does not contain an express "good faith" provision.

7. Article I, section 29, of the Missouri Constitution creates a legally enforceable duty by a public employer "to bargain collectively with those employees and, when necessary, adopt procedures to participate in that process." *Eastern Missouri Coalition of Police, Fraternal Order of Police, Lodge 15 v. City of Chesterfield* (consolidated with) *Eastern Missouri Coalition of Police, Fraternal Order of Police, Lodge 15 v. City of University City*, 386 S.W.3d 755, 760 (Mo. banc 2012) (decided November 20, 2012, Nos. SC91736 and SC91737, Judge Fischer dissenting).

8. Even though the learned Judge Price foreshadowed that it would be hard to predict how a majority of this Court would apply "giving public employees a new constitutional right to 'collective bargaining' that the majority does not define," it is surprising that a majority of this Court would reverse years of precedent to now hold that every local government that has public employees must establish its own version of the public sector labor law to establish a framework to negotiate with its public employees. *Independence,* 223 S.W.3d at 148 (Price, J., dissenting).